WIRT ADAMS, STATE REVENUE AGENT *v.* BOLIVAR COUNTY.

STATE REVENUE AGENT. *Compensation. Code* 1892, § 4199; *Laws* 1894, *p.* 29.

> The state revenue agent is entitled, under the statutes, code 1892, § 4199, and laws of 1894, page 29, to the compensation therein provided, where he makes investigation of a defaulting tax collector's accounts, and the money is afterwards paid over to him, or to some other officer entitled to receive it, whether or not suit is brought by him; and this is true, though the defalcation is evidenced by correct accounts on the official records kept by the defaulter.

FROM the circuit court of Bolivar county.

HON. F. A. MONTGOMERY, Judge.

The appellant, plaintiff, sued the county of Bolivar. The averments of the declaration are sufficiently stated in, or are inferable from, the opinion. The defendant, appellee, demurred to the declaration; the court below sustained the demurrer and dismissed the suit. The plaintiff appealed.

*F. C. Larkin* and *Jas. R. Yerger*, for appellant.

If section 2, chapter 34, of the acts of 1894 means anything at all, it must be construed to mean that, after the revenue agent has made his investigation and discovered a sum in default, he has the right to collect that sum with or without suit, and where the indebtedness appears by correct open account, then, after the thirty days' notice, given as required, has expired, he has the right to collect, with or without suit, the indebtedness dis-covered, and which he has notified the official to pay over. If, then, he has this right of collection, it must necessarily follow that when he undertakes to exercise this right by performing some act on his part, showing an effort to collect, that he has earned his compensation whenever payment of the sum claimed by him has been paid into the proper treasury. There is no difference in principle between the construction asked for by us and the principle announced in the case above cited. *Miller* v. *The Delta & Pine Land Co.*, 74 Miss., 110.

*O. G. McGuire* and *Brame & Alexander*, for the appellee.

The very fact that section 2, chapter 34, laws 1894, provides that where an officer is delinquent and his books show the amount due, the revenue agent shall give thirty days' notice, when read in connection with § 4199 of the code of 1892, that the officer shall only be entitled to commissions on the actual amount collected by him, and shall not be entitled to any com-pensation for investigation, is the strongest argument against the claim now propounded. The object of the law is to give the delinquent officer thirty days, after notice, within which to pay over the amount due by him, and to debar the revenue agent from proceeding against him during that time.

The act of 1894, when construed with the provisions of the code, makes it absolutely certain that the revenue agent is not entitled to any compensation where the books of the de-linquent officer show the amount due and he pays over the amount within thirty days after notice or before suit is brought.

The revenue agent has no vested right to compensation merely because an officer, at any given time, is delinquent; the only right he acquires by giving the notice in the case of an officer whose delinquency appears by his books, is to bring suit and collect the money and get his commissions, if the amount is not paid within the thirty days, or before suit.

Argued orally by *L. Brame*, for appellee.

WHITFIELD, J., delivered the opinion of the court.

The declaration avers that the appellant "did, during the months of June, July, and August, 1894, make an investigation of the books, accounts, and vouchers of George P. Melchior, then the sheriff and tax collector of said Bolivar county, and as the result of said investigation, discovered that the said Geo. P. Melchior, tax collector, was indebted to the county of Bolivar, in the sum of $7,409.57, for taxes due said county and collected by said Melchior, as tax collector of said county; that, at the time of the discovery of said indebtedness by appellant, the time fixed by law for the payment of said money into the treasury of said county had long since passed, and said Melchior had failed to make payment of said taxes, . . . and was in default for the same;" that appellant completed his investigation August 4, 1894; and, the indebtedness appearing by correct open account on the books of the said Melchior, as tax collector, he presented a statement thereof to him on August 4, 1894, and notified him to pay the same into the treasury of the county, and that, if that was not done within thirty days, he would claim the right to collect the same, and would proceed legally to enforce such payment, unless payment should be made within the thirty days to the treasurer of the county, or, after that, to appellant; that Melchior did not pay within the thirty days; that on the expiration of the thirty days' notice so given, appellant "proceeded to collect the indebtedness, . . . and placed the same in the hands of his attorneys, with instructions

to institute suit therefor, to the first ensuing term of court in said county; and that, while said account was in the hands of his attorneys, and while said attorneys were preparing to institute suit to collect said indebtedness, and before any steps were taken on the part of the authorities of said county to collect the same, the said Melchior, on September 14, 1894, paid the same into the treasury of said county; that at the time said payment was made, his right to collect the same had accrued, and he was proceeding to enforce the collection of said sum of money, . . . and that the payment of said sum of money was the result of his investigation and the performance of his duty, under the law;'' and that he had presented a claim for twenty per cent. of the same to the board of supervisors of said county, which it had rejected, wherefore he sued. The suit is to recover this sum, $1,481.91, not out of the general county funds, but out of the $7,409.57 so paid into the county treasury.

The decision of the case involves the construction of § 4199, code of 1892, and section 2 of the act of February 7, 1894 (Laws, p. 29). Compensation for two things, an ''investigation made'' or a ''suit instituted,'' is provided for by § 4199, when either results in the collection of the money. The revenue agent is to have no salary, but his compensation is contingent wholly upon the moneys being collected and paid over to the proper authorities. Neither the state nor any governmental subdivision of it is to be liable to him upon any *quantum meruit* for ''fees or expenses incurred in any investigation made or suit instituted,'' no matter how large the fees or expenses by him incurred, where no collection is made; and when it is made his compensation is fixed by the statute, to be carved out of the fund so collected—''retained'' by him, when paid to him, and when not actually collected by him personally and paid over by him personally, but collected and paid over as a result either of his investigation without suit, or of a suit, then to be paid to him by the proper authorities out of that fund so collected. He is to be paid, when successful, for both his ''ex-

penses and his services." Expenses might be incurred by him both in an investigation and in a suit. Services he could ordinarily render, in the meaning of this statute, chiefly, at least, in the making of the investigation alone; for, that made, he has no "services" to render, when a suit is instituted, except the merely incidental one of attending to the suit in its progress, conducted for him by attorneys. The legislature meant to pay him for "his services"—compensate him for work done by him resulting in the collection. It is too clear for argument, that this is the only reasonable construction of the statute as to this.

It is argued, however, that he must himself, personally, or through one of his deputies or agents, collect and pay over the money. Learned counsel for appellee concedes, however, that in case of suit the appellant would, perhaps, be entitled to his commissions, if judgment had been rendered. But that concedes the principle, clearly. For if the appellant is to be paid —and out of money collected and paid over by himself or his agent, personally—that must be, strictly and only, for the reason that literally the statute says "twenty per centum on all amounts collected and paid over by him." That construction must stand on the literal letter of the law, without regard to its clear scope and purpose. If the revenue agent may receive his pay, though he did not collect and pay over the money, when a suit has been brought and judgment rendered, why not after verdict and before judgment? Why not when the evidence is closed, showing clear liability? If he may be paid in any case, when the money is not collected and paid over by him. the argument is ended which invokes the mere letter of the statute. For that argument goes wholly upon the actual manual collection and payment by the revenue agent of the money, not upon its payment into the county treasury by the defaulter, as a result of the judgment. Money paid into the county treasury by the defaulter is not paid there by the revenue agent personally, and money paid into the treasury in pursuance of a judgment is no

more there as a result of the revenue agent's performance of his duties than money paid into the treasury without any suit at all, but, after an investigation, is there as the result of such performance of duty. It is always his duty to investigate. It may never become his duty to sue.

The construction contended for would practically nullify the whole legislative scheme declared by the law. Every defaulter knows or stands charged with the knowledge of the fact. Whenever, therefore, he knew, as necessarily he would always know, that the revenue agent was examining his books, he would have nothing to do to cut him off from any compensation, save to pay over to the proper authorities, when due the revenue agent, the amount due. The defaulter would incur no risk, for if he payed too much he could recover the surplus. But the revenue agent, no matter how long or onerous the investigation, or how expensive the suit up to judgment, on counsel's contention, would be thus easily circumvented, and that, too, when the state, or the governmental subdivision thereof, got the revenue solely by reason of the services thus rendered by the revenue agent.

But it is insisted that in a case where the "delinquency appears by a correct open account on the books" of the tax collector, as here, the revenue agent is not entitled to any compensation unless he sues. It is broadly contended that the effect of this provision is to cut off the revenue agent from compensation in such case, when the delinquent pays after notice, within the thirty days, to the county treasurer, or after the thirty days, before judgment rendered in a suit instituted, and that that is the purpose of this provision. This construction is wholly untenable. It is too narrow, and loses sight of the whole remedial scope of the legislation creating this office. The manifest purpose of this provision is to prevent honest officials, who, for many reasons—such as absence, sickness, etc.—may not be ready to pay over on the very day or week of a delinquency occurring, from being, with their sureties, harassed with an

unnecessary suit.   A reasonable time to pay over, thirty days, is therefore given.   The statute (section 2 of the act of 1894) does not provide that when the revenue agent has found from a correct open account kept on the books of the defaulter, and he pays within thirty days after notice to the county treasurer, or proper authority other than the revenue agent, the revenue agent shall not receive any compensation; it only says he shall not sue within thirty days; the statute gives a right of action after the thirty days.   If the defendant pays the revenue agent after the thirty days, would he not be entitled to receipt him and retain his compensation?   And, if so, why would he not be so entitled, without suit, if the defaulter pays the county treasurer?   In either case the payment is the direct result of the services rendered by the revenue agent.

Manifestly, the construction contended for would encourage needless suits, as clearly the revenue agent, on that construction, could only save himself from being put completely at the mercy of every defaulter in the state, by suing all officials whose books he is required to investigate, before investigating at all.   The statute (§ 2) makes it his duty to "investigate the books, accounts, and vouchers of all fiscal officers of the state, and of every county, municipality, and levee board," and to sue for and collect from every such defaulting "fiscal officer," any sum due.   Now, if—whether the delinquency appears by a correct open account on the books of such officer or not—he can be deprived of compensation for services rendered in "investigations made," by the easy process of payment by such defaulting fiscal officer, to proper authorities other than himself, his compensation is made to depend not upon services rendered, and as a result of which the money is collected, but upon the mode of payment and the conduct of the defaulter, and he will be helplessly in the power of fiscal officers who are defaulters, and whose defalcations have been brought to light solely through his services.   Statutes must receive that construction which takes into view the evil they seek to remedy,

and the remedy sought to be applied.   The evil was the constantly occurring defalcations of fiscal officers, whereby the public revenues were being grossly defrauded.   The remedy was the creation of this office of revenue agent, and the payment of contingent compensation large enough to incite him to prompt and efficient action in the collection of these defalcations.   When it is remembered that he gets no salary, and that no compensation for services or expenses is to be made unless he succeeds in the collection, and that he is required to investigate the books, etc., of all these fiscal officers, over the entire state, and that necessarily most of these investigations must prove fruitless, because of the honesty of most of such officers, it is easy to see that the compensation is in no proper sense large.   It is a reasonable and proper compensation which the legislative wisdom provided, and the wisdom of the statute has been most abundantly vindicated by the results, in the collection of large sums which doubtless, but for this most wholesome legislation, would have been finally lost to the public revenues, and by the operation of such collections to keep down needless taxation.

We regard this case as falling strictly within the principle of *Miller* v. *Delta & Pine Land Co.*, 74 Miss., 110.   As in that case the tax collector had entered upon the doing of the acts which entitled him to damages, so here the revenue agent had entered upon and had done all that he could ordinarily do.   He had investigated for three months; the defalcations were for taxes long past due; he had given the notice and waited the thirty days; after the expiration of the thirty days he had prepared his papers, employed his attorneys, put the case into their hands and instructed them to sue to the first term, and they were actually preparing the suit.   We said, in Miller's case: "There is no point in the proceeding, once begun, at which it may be said that the right to the compensation has attached rather than at another.   Whether the collection is made by virtue of a proceeding, initiate or complete, it is by the proceeding it is made,

and the right to compensation exists because otherwise, whether it will be payable at all would depend upon the will of the delinquent, rather than upon the letter of the law.'' The investigation is as much a part of the proceeding for collection as the suit, and here, no more than there, can the compensation be made to depend upon the will of the delinquent.

' It is a grave misconception to suppose that strict construction of this legislation—sticking in the bark and emasculating its plain spirit and scope—is a construction in the interest of the state. The very reverse is true. The interest of the state and of her revenue agent in this matter is identical. He gets nothing if nothing is collected. He gets his twenty per cent. only when the public revenues get their eighty per cent. The discharge of his duties—unpleasant ones, doubtless, in the extreme —brings terror to no honest fiscal officer, and the dishonest are not the objects of this legislation's tender regard. He is a public officer, elected by the people, serving the people, aiding in keeping down their taxes, teaching fiscal honesty in the school of legal compulsion to those who will learn in no other, and who prefer paying the high tuition exacted in that school to being honest for honesty's sake.

*The judgment is reversed, the demurrer overruled, and the cause remanded.*