MILLER, STATE REVENUE AGENT, v. GORE *et al.**

(Division A.   Feb. 21, 1927.   Suggestion of Error Overruled April 18, 1927.)

[113 So. 203.   No. 25747.]

1. COUNTIES.   *State revenue agent may recover excessive sum loaned by board of supervisors out of county sinking fund (Hemingway's Code, sections 3704, 7056).*

   Under Laws 1912, chapter 234 (Hemingway's Code, section 3704), attempt to loan by board of supervisors out of county bond-sinking funds in an amount nearly double the assessed value of security given therefor is unauthorized and illegal, and under Code 1906, section 4738 (Hemingway's Code, section 7056), state revenue agent had authority to sue for and recover on behalf of county the sum so loaned.

2. COUNTIES.   *State revenue agent held entitled to commission on amount paid after action to recover illegal loan by supervisors from county sinking fund (Hemingway's Code, section 7066).*

   Under Code 1906, section 4748 (Hemingway's Code, section 7066), relative to compensation of state revenue agent, he is entitled to recover twenty per cent, commission on bringing suit to recover

558                        MILLER *v.* GORE.                    [Sup. Ct.

Opinion of the Court.                                    [146 Miss.
Opinion of the Court.                                    [146 Miss.

moneys illegally loaned by board of supervisors, notwithstanding payment was made into county treasury before determination of action.

3. COUNTIES. *Defendants, in suit by state revenue agent to recover illegal loan from sinking fund by board of supervisors, held liable for reasonable attorneys' fees.*

Defendants, in action by state revenue agent to recover amount illegally loaned by board of supervisors from county sinking fund, *held* liable for reasonable attorneys' fees for collection as provided in note executed to county, since, having participated in illegal act and received funds on insufficient security, they are estopped to take advantage of illegal action of supervisors in making attempted loan.

---

*Corpus Juris-Cyc References: Counties, 15CJ, p. 588, n. 51 New.

APPEAL from chancery court of Quitman county.

HON. C. L. LOMAX Chancellor.

Suit by W. J. Miller, state revenue agent, against W. E. Gore and others. Decree of dismissal, and complainant appeals. Reversed and decree rendered.

*Boone, Lowrey & Boone* and *Lowrey & Lamb*, for appellant.

*Cutrer & Smith*, for appellees.

*Reporter's Note*: All briefs missing from the record.

Argued orally by *P. H. Lowrey*, for appellant, and *E. W. Smith*, for appellees.

COOK, J., delivered the opinion of the court.

W. J. Miller, state revenue agent, filed a bill in the chancery court, for the use and benefit of Quitman county, against W. E. Gore and his wife, Mrs. Bessie G. Gore, M. P. Lowrey, trustee, and the members of the board of supervisors of Quitman county and the sureties on their official bonds, charging, in substance, that in September, 1919, the said board of supervisors had loaned to the

defendant W. E. Gore the sum of ten thousand five hundred dollars out of the bond-sinking funds of said county, which said loan was evidenced by a promissory note due four and one-half years after date, bearing interest at the rate of six per cent. per annum, payable annually, and providing for the payment of a reasonable attorney's fee for collection if not paid at maturity, and was secured by a deed of trust on real estate of the assessed value of only five thousand nine hundred dollars; that the said loan was illegal and fraudulent, for the reason that the sum loaned was largely in excess of the amount of such funds that might lawfully be loaned on security of the assessed value named; that the said unauthorized and illegal loan was made by collusion between the said members of the board of supervisors and the said defendant W. E. Gore; that by reason of the violation of the statute then in force regulating such loans the members of the board of supervisors became personally liable for the amount of the loan, and especially for any loss sustained by the county by reason of the illegal disposition of said funds; that on account of the fact that the allowance of the said sum to the defendants W. E. Gore and Bessie G. Gore was unauthorized and illegal in its inception, they became and were liable to at once repay the said sum into the county treasury, regardless of the date of maturity fixed in the alleged loan contract; that by reason of their participation in the said unauthorized and illegal actions of the board of supervisors in making said attempted loan, they could not take advantage thereof, and, consequently, the complainant had the right to sue for said sum and to have the said deed of trust foreclosed and the proceeds applied to such decree as might be rendered against the several defendants. The bill prayed that the said allowance of ten thousand five hundred dollars to the said defendants, W. E. Gore and his wife, Mrs. Bessie G. Gore, be decreed to be an unauthorized and illegal expenditure and allowance and in contravention of the statute; that a

decree be entered in favor of the complainant and against all the defendants for the said sum, with accrued interest and attorney's fees as provided in the note; and that the deed of trust executed by the defendants W. E. Gore and wife be foreclosed and the proceeds of the sale applied to payment of such decree.

All the defendants filed a demurrer to the bill of complaint, which was overruled as to the defendants W. E. Gore and Mrs. Bessie G. Gore and sustained as to the members of the board of supervisors. From this order sustaining the demurrer, an appeal was prosecuted to this court, but this appeal was afterwards dismissed. After the demurrer was overruled as to the defendants W. E. Gore and wife, they paid into the county treasury the amount of the said indebtedness, with accrued interest, and thereupon filed an answer to the bill of complaint admitting the correctness of the indebtedness sued for, but averring that the same was not due at the time the suit was filed, for the reason that after the maturity of said note, the board of supervisors, for a valuable consideration, duly made and entered an order extending the due date of the said indebtedness to the 8th day of April, 1925. The answer denied all charges of collusion in the negotiations for the loan, and all illegality in the consummated loan, and charged that the indebtedness sued for had been paid in full before the same was due.

The principal and interest of the indebtedness having been paid into the county treasury, through the board of supervisors, the suit proceeded to a final hearing upon the claim of the complainant, the revenue agent, for the commissions of "twenty per cent. of all amounts collected and paid over by him" allowed him by law, and also a reasonable attorney's fee for collection as provided in the note given to evidence the loan. The court below denied any recovery and dismissed the bill, and from this decree the complainant prosecuted this appeal.

In passing upon the correctness of the action of the court below in denying a recovery of the commissions

allowed by law to the revenue agent, it will be necessary to first determine whether or not the revenue agent had the right to institute and maintain this suit at the time it was instituted. If this question is answered in the affirmaive, then the right of the revenue agent to recover this commission from the appellees is established by former decisions of this court.

This loan was effected in September, 1919, out of the courthouse and jail bond sinking funds; and at that time the authority of the board of supervisors to issue such bonds and to create a fund for the retirement of the same and to loan such sinking fund was found in chapter 234, Laws of 1912 (section 3704, Hemingway's Code), which, among other things, provided that:

"Whenever said sinking fund shall accumulate to an appreciable amount before the time for the redemption of said bonds, the board of supervisors may loan such accumulation at a rate of interest not less than six per cent. and on such terms and for such time not longer than the date fixed for the maturity of said bonds as they see fit, such loans to be secured upon improved real estate at one-half of its assessed value, and upon abstract of such real estate as provided for the loan of funds arising from the sale or lease of sixteenth section lands."

While there was some proof tending to show that the value of the security given for the loan here involved was appraised at thirty thousand dollars by a committee of the board of supervisors, the proof was positive and undisputed that the assessed value of the real estate covered by the deed of trust together with forty acres of additional land, was only six thousand two hundred twenty-four dollars. The amount of the loan and allowance out of this bond sinking fund was ten thousand five hundred dollars, or nearly double the assessed value of the security given for the loan. This was in plain contravention of the express provision and limitation of the statute authorizing the loan of these funds, which only permitted a loan of not exceeding one-half of the assessed value of the se-

curity, and, consequently, the attempted loan was unauthorized and illegal. The board of supervisors was wholly without authority to make such an allowance out of the public funds, and, having done so, it was its duty to immediately sue for and recover the amount, and the recipients of this unauthorized and illegal allowance were under duty to at once repay the amount into the county treasury, and upon their failure to do so were subject to be coerced to do so by suit and foreclosure of the security given for the money received by them. This duty and liability were in no way affected by the attempt of the board of supervisors to extend the maturity of the indebtedness after it had matured under the terms of the original order of the board. At the time of this attempted extension, the statute authorizing the loan of bond sinking funds had been amended by chapter 278, Laws of 1920, so as to authorize the loan of such funds on the security of a first deed of trust upon improved real estate at one-fourth of its actual value, to be determined by an appraisement of the board of supervisors or a committee appointed for that purpose; but the record does not show that any such appraisement was made at the time of the attempted extension. The only appraisement of the security given for this loan was made at the time the original loan was made in 1919, at which time the property appears to have been appraised at thirty thousand dollars, which, under the act of 1920, would have authorized a loan on the security of only seven thousand five hundred dollars. At the time this loan was made, the statute only authorized a loan out of such funds of not more than one-half of the assessed value of the security offered, and, the board having exceeded its authority in this regard and having made a loan which was prohibited by the express terms of this statute, the subsequent unauthorized attempt to extend it added no validity thereto, and the revenue agent had the right to sue for and recover on behalf of the county the sum so loaned, and his authority for so doing is found in section 4738,

March, 1927]    MILLER *v.* GORE.    563

146 Miss.]    Opinion of the Court.

Code of 1906 (section 7056, Hemingway's Code), which gives him the power and makes it his duty to proceed by suit in the proper court for all past-due obligations and indebtedness of any character whatever owing to the state or any county.

Having reached the conclusion that the revenue agent had the right to institute and maintain the suit to recover from the appellees the amount of this unauthorized allowance out of the public funds, it necessarily follows from prior decisions of this court that, under the facts and circumstances here involved, he is entitled to recover from them the twenty per cent. commission allowed him by law on all amounts collected and paid over by him. Long after the institution of this suit against the appellees and the board of supervisors, and while it was pending and being actively prosecuted by the complainant, the revenue agent, the appellee, through the board of supervisors, paid into the county treasury the entire principal of the sum sued for, together with the interest accrued thereon at six per cent. per annum. The statute governing the compensation of the revenue agent is section 4748, Code of 1906 (section 7066, Hemingway's Code), which provides:

"Neither the state nor any county, municipality, or levee board shall be chargeable with any fees or expenses on account of any investigation or suit made or instituted by the state revenue agent; and he shall not receive any salary; but he shall be entitled to retain, as full compensation for his services and expenses, twenty per centum of all amounts collected and paid over by him, and of the purchase money of all lands bid in for the state by him and sold by the land commissioner."

In the case of *Miller* v. *Henry*, 139 Miss. 651, 103 So. 203, this court, in discussing the exact question as now presented, said:

"It was held in *Adams* v. *Bolivar County*, 75 Miss. 154, 21 So. 608, that the revenue agent, having given the required notice was entitled to his compensation

whether suit had been brought or not, if his investigation was the cause of the money being paid over by the defaulting taxpayer, and that the revenue agent could not be deprived of his commissions, by the defaulting officer paying the money into the treasury. Under the statute, the revenue agent is entitled to recover for the state eighty per cent. of the amount due by the defaulting officer, and for himself twenty per cent. of the amount. The state has no interest in his commission of twenty per cent. Appellee had no right to pay the five hundred dollars into the state treasury. In fact it would have been more regular under section 4739, Code of 1906 (section 7057, Hemingway's Code), if the entire amount had been paid over to the revenue agent. He was authorized to collect it with or without suit, and, when collected, his interest in the collection was twenty per cent. of the amount. He was not required to pay the whole amount into the state treasury, and then make claim against the state, if that could be done for his commission of twenty per cent. Appellee, by paying into the state treasury appellant's commissions, did not acquit himself of his obligation under the law to appellant. He was due to pay that to appellant and no one else.''

The only remaining question is whether or not the appellees were liable for a reasonable attorney's fee for collection as provided in the note executed by them at the time of the consummation of this unauthorized loan. The appellees were charged with notice of the provisions of the statute authorizing the loan of these sinking funds and of the want of authority in the board of supervisors to make the loan in question, and, having participated in this unauthorized and illegal act and having received the funds upon insufficient security, they are now estopped to take advantage of the said unauthorized and illegal action of the board of supervisors in making said attempted loan, or to assert to their own advantage the invalidity of the note evidencing the indebtedness, or the security given therefor. Consequently, it having

become necessary to employ counsel to file suit and carry on litigation for the recovery of this unauthorized loan, we think the appellees became, and are, liable for a reasonable attorney's fee, as provided in the note, to be recovered by the revenue agent for and on behalf of the county. The evidence is that ten per cent. of the amount sued for and paid into the treasury as a result of the suit would be a reasonable attorney's fee.

The decree of the court below dismissing the bill of complaint will therefore be reversed, and a decree entered here awarding the revenue agent twenty per cent. on thirteen thousand and thirty dollars and fifty cents paid into the county treasury, as compensation, and also ten per cent. of said sum as attorneys' fees.

*Reversed, and decree here for appellant.*