ROBERTSON, STATE REVENUE AGENT, v. SHELTON, TAX COL-
LECTOR.

[90 South. 83. No. 21943.]

1. TAXATION. *State revenue collector held not entitled to twenty per cent. commission on taxes actually paid to county tax collector.*

When the state revenue agent in the month of July, 1917, made an investigation of the books of the county tax collector, and found thereon tax receipts made out in blank by the tax collector for delinquent taxes upon real and personal property which had been properly assessed, and attempted to collect these taxes by sending out written notices to these delinquent taxpayers from his office in Jackson, Miss., to pay the taxes to him, and the testimony shows that the county tax collector had ben collecting taxes since they became past due and unpaid, and had collected a great amount of taxes and was actively collecting taxes at the time of this investigation and notice of the revenue agent, and the taxes were actually paid by the delinquent taxpayers to the tax collector, though no coercive statutory measures had been taken by either the state revenue agent or the county tax collector to collect these taxes, the county tax collector was the one who actually collected the taxes and the state revenue agent is not entitled to the twenty per cent. commission provided for in section ·4748, Code of 1906 (section 7066, Hemingway's Code).

2. TAXATION. *Only coercive measures by revenue agent entitling him to commission is statutory suit to collect exclusive.*

The only coercive method by which the state revenue agent may proceed to collect taxes duly assessed is by suit as provided for in section 4738, Code of 1906 (section 7056, Hemingway's Code).

3. TAXATION. *In revenue agent's action for commission, proof held inadmissible to show that taxes were paid to the collector because of the agent's activities.*

When the testimony shows that the county tax collector was attempting to collect delinquent taxes, and that the taxes were actually paid to him, in the absence of any resort to any statutory coercive measures by the state revenue agent, proof is inadmissible to show that the taxes were actually paid to the tax collector as a direct result of the activities of the state revenue agent. The county tax collector is the one who actually collected the taxes.

4. TAXATION. *Officer to whom taxes are paid is the one who actually collects them.*

In the absence of a resort to coercive measures for the collection of taxes, and when the taxes by statute may be paid to two different officers, the officer to whom the taxes are paid is the one who actually collects them.

Appeal from chancery court of Copiah county.

HON. V. J. STRICKER, Chancellor.

Suit by Stokes V. Robertson, State Revenue Agent, against Burnell Shelton, Tax Collector. Decree for defendant, and plaintiff appeals. Affirmed.

*G. G. Lyell,* for appellant.

The authorities upon which the appellant relies are the following: Chapter 131, State Revenue Agent, and especially section 4738 (Bowers of State Revenue Agent); 4739 (Duties); 4744 (Power to Examine Books); 4748 (Compensation); Parties to suit by); 4295, assessment; 2456 (Taxes a debt recoverable by action); 4312 (Collection of taxes); 4315 (Taxes collected by distress); 4326 (Sale of land for taxes); 4341 (Taxes collected in certain cases by sale of debts); 4350 (Report of insolvency); 4351 (How allowed, etc.); 4352 (Report to be carefully scrutinized); 4352 (Notwithstanding the allowance taxes to be collected); 4357 (Tax collectors reports and taxes paid over monthly, and final settlement); Laws 1912, chapter 242, amending this last section; 4366 (Liability of assessor and tax collector); 4367. (How land not sold at regular time may be sold); *Delta and Pine Land Company* v. *Adams,* 93 Miss. 340, 48 So. 190; *Miller* v. *Land Company,* 74 Miss. 110, 20 So. 875; *Railroad Company* v. *West,* 78 Miss. 789; *Adams* v. *Bolivar County,* 75 Miss. 154; *State* v. *Kuhn,* 72 Miss. 276, at page 280; *Brougher* v. *Conley,* 62 Miss. 358; *Garrett* v. *Robertson, Rev. Agent,* 120 Miss. 731, 743, 83 So. 178; *Johnson* v. *Yazoo Co.,* 115 Miss, 528, 76 So. 543; *Brougher* v. *Conley,* 62 Miss. 358.

*Wilson & Henley,* for appellees.

Has the state revenue agent earned his commission according to law? Section 7066, of the Hemingway Code provides: "He shall be entitled to retain for full compensation for his services and expenses twenty per cent of all amounts collected and paid over by him."

If the state revenue agent has rendered the services required by law, that is, the collection of taxes, he is entitled to recover. But if the taxes involved in this controversy were collected solely by the tax collector of Copiah county and the efforts of the revenue agent were not the moving cause of the collection, then the court below is correct and this case should be affirmed. This is the only issue and all other matters are superfluous.

The court below logically determined the issue in this cause in the following language: "The revenue agent claims that as a result of his intervention and mediate activities, culminating with the notice mailed at Jackson, the taxes were paid, and that thus he collected it, and though such collection was not actual it was constructive and the result of his proceedings to that end." Indeed, the bill alleges, and, "Complainant expressly charges and shows to the court that the payment of taxes made by the delinquents listed in Exhibit 'A' since July 27, 1917, have been made as a direct and proximate result of the investigation and services of complainant, acting in his official capacity as aforesaid. Defendant denies that the payment of taxes made by the delinquent listed in Exhibit 'A' since July 27, 1917, has been made as the direct and proximate result of the alleged investigation and services of complainant, acting in his official capacity, or otherwise."

The issue is plain. It simply alleges and denies an implied, or constructive collection by the revenue agent. It presents therefore a question of fact.

We quote the above excerpt from the opinion of the court in this case, upon bill, answer and proof, at this place in our argument merely for the purpose of justifying the

elimination of every other issue. In the case at bar, it is conceded that both the tax collector and revenue agent had a right to, and it was the duty of each to collect the delinquent taxes, and it being difficult to distinguish just what moves any certain taxpayer may make to pay his taxes at a particular time, our courts have very wisely refused to enter into an endless examination of cause and effect in the payment of the taxes for each and every individual citizen, but give full credit to the public officer who produces the goods.

This doctrine was first announced in the case of *Wynne* v. *Railroad Company,* 45 Miss. 569.

There is no compensation for official services where no official services are in fact rendered. The case is analogous to that of *Wynne* v. *Railroad Co.,* 45 Miss. 569. The question in that case was whether a sheriff was entitled to commissions on money paid directly to the judgment creditor by the debtor, execution having already been levied upon the debtor's property, by the sheriff. The court held, in an opinion never since questioned in this state, that the officer was not entitled to the commissions. Commissions are given as a compensation for services really performed; and when these are not performed, compensation cannot be justly claimed. We know of no such service by an officer as constructive service. There must be an actual collection of taxes, not a constructive collection, to entitle to compensation.

The court will note that we quote slightly more of the opinion in the above case than appears in the chancellor's opinion. The revenue agent does not claim to have performed any act conducive to the collection of the delinquent taxes except mailing notices and demanding that they pay the taxes to him. The statutes nowhere provide for the issuance of such notices. This was not the commencement of a coercive course for the collection of taxes. It was not a matter *ejusdem generis* to a suit.

Until appellant shows that he had begun some coercive course of action prescribed by statute, in an effort to col-

lect the taxes, there is no foundation upon which to base his contention that the collection was a direct and proximate result of his activities. Appellant, therefore, cannot recover upon the theory of a constructive collection without first showing that he is instituting some proceedings prescribed by law. *Anderson* v. *Hawkes*, 70 Miss. 639; *Railroad Company* v. *Love*, 69 Miss. 109.

But leaving out of consideration this legal question the court below decided this controversy in appellee's favor upon a question of facts. We were quite surprised at the statement in appellant's brief that there was no finding of facts against appellant in this cause. The original bill alleged that the collection of delinquent taxes was made as a direct and approximate result of the activities of the state revenue agent and his deputies, which was specifically denied in appellee's answer. In fact, the question of whether appellant's efforts resulted in the collection of the taxes, was the whole issue in this case and all the testimony introduced revolved about this pivotal point. We also invite the court's attention to the distinction in the case at bar and the case of *Adams* v. *Bolivar Counties*, 21 So. 608, so ably set forth in the opinion of the court in pages 39 to 41 of the record.

In conclusion, we respectfully submit that; first, the appellant has not entered upon any coercive course of action prescribed by statute for collection of taxes, and therefore could not possibly be entitled to any commission; second, that the chancellor's finding of fact that the delinquent taxes were collected entirely as a result of the efforts of the tax collector and his deputies and that the activities of the revenue agent had nothing whatever to do with their collection. This finding of fact is supported by the weight of the evidence, and therefore appellant is not entitled to recover even on the theory of a constructive collection.

For the foregoing reasons appellee contends that this case should be affirmed.

SYKES, J., delivered the opinion of the court.

The state revenue agent prosecutes an appeal to this court from a final decree of the chancery court of Copiah county denying him twenty per cent. commission which he claimed to be due him from the collection of taxes from a large number of delinquents for state and county taxes for the year 1916. It is his contention that his investigation and activities resulted in the collection of these taxes, thereby entitling him to his commission under section 4748, Code of 1906 (section 7066, Hemingway's Code), which section reads as follows:

"Neither the state nor any county, municipality, or levee board shall be chargeable with any fees or expenses on account of any investigation or suit made or instituted by the state revenue agent; and he shall not receive any salary; but he shall be entitled to retain, as full compensation for his services and expenses, twenty per centum on all amounts collected and paid over by him, and of the purchase money of all lands bid in for the state by him and sold by the land commissioner."

The bill alleges that he made an investigation of the records on file in the office of the state auditor, and discovered that a large amount of taxes due for that year were past due and unpaid into the state treasury, and thereupon he sent some deputies to the county of Copiah, who made a careful investigation and audit of the books of the fiscal officers of that county and found therefrom on July 27, 1917, there were a large number of tax delinquents, a copy of which list is filed as an exhibit to the bill. It appears from the record in this case that this copy was made by the deputy of the revenue agent from a list of unsigned tax receipts already made out in the tax collector's office. These receipts covered delinquent owners of real property, including in some cases all personal property of these real estate owners. No unsigned receipts had been made out for delinquents upon personal property alone, and no effort was made by this deputy to ascertain

these delinquents. After this deputy had prepared this list
he had some conversation with the tax collector, Mr. Shel-
ton, about the collection of these taxes, in which conversa-
tion the tax collector declined to recognize the right of the
revenue agent to supersede him, but stated that he would
continue his efforts to collect all taxes, and declined to
recognize the authority of the revenue agent to in any way
intervene. A few days thereafter from his office in Jack-
son the revenue agent mailed out letters to these delinquent
taxpayers, calling their attention to their delinquency, and
demanding payment of the taxes to him. On July 28th he
gave written notice to the board of supervisors of Copiah
county that he had demanded payment of these taxes, there-
in giving an itemized list of the delinquents.

It is shown by the testimony that the county tax collector
had been actively engaged in the collection of taxes since
they became due, and had sent out a number of notices to
the delinquent taxpayers, urging them to pay their taxes,
one of which notices was sent out several days before the
notice of the revenue agent. The record further shows
that there had been no sales of lands for delinquent taxes
in Copiah county on April 1st, nor at any other date before
the revenue agent attempted to intervene in the matter.
It is undisputed, however, that the county tax collector
during all this time was actively collecting taxes and ac-
tively attempting to collect these delinquent taxes. These
delinquent taxes as a matter of fact were paid directly to
the sheriff. There is no testimony in the record showing
that any of these taxes were paid because of the notice
sent out by the revenue agent. The bill expressly charges
that the payment of these taxes made to the county tax
collector was "a direct and proximate result of the in-
vestigation and service of complainant's acting in his of-
ficial capacity as aforesaid." These receipts for delinquent
taxes when issued were all dated February 1st, though
some of the taxes as a matter of fact were not paid until
August.

Before the deputy of the revenue agent appeared upon the scene the tax collector had prepared a list of lands upon which taxes had not been paid to submit to the board of supervisors at its August meeting with a request that he be allowed to sell them. This list was submitted to the board, an order passed and some of the lands were actually sold for delinquent taxes. From the record in the case it is shown that taxes upon both real and personal property were being collected by the sheriff during every month after they were past due; that there was no appreciable increase in these payments during the month of July after the notice of the revenue agent had been mailed; that there was some little increase in August, especially on August 9th, when there were one hundred and seventy-nine collections made. Of this number, however, only forty-one were upon the list of the revenue agent; the others being for personal property only.

The appellant also attempted to show that the custom had existed in this county for many years not to advertise for sale the real property on April 1st, as provided by the statute. The testimony of the sheriff and other witnesses was to the effect that he did not prepare this list for sale at that time because of certain discrepancies in the assessment roll, but made an oral request of the board of supervisors that the sale be pretermitted to a later date. This, however, constituted no legal excuse for the postponement of the land sale.

The narrow issue presented to the chancellor of the court below was whether or not the investigation of the revenue agent was the proximate cause of the payment of these taxes to the tax collector. To state this contention in the language of the learned counsel for the appellant as contained in his splendid brief:

"Appellant claims that his investigation and activities resulted in a collection of the taxes, entitling him to his commission of twenty per centum upon a total delinquency of between seven thousand dollars and ten thousand dollars.

"The revenue agent did not file any suits against the delinquents, nor did he personally collect the taxes, but he claims his commission by virtue of the fact that such delinquency was discovered by him the latter part of July, 1917, and he sent in due course of mail each delinquent a notice; further because said notices demanding payment were mailed at Jackson, Miss., on July 29, 1917, and that, beginning the next day and continuing on the subsequent days immediately thereafter, the delinquents paid the tax collector such delinquent taxes.

"That the presumption must be indulged that his investigation and the mailing of notices to the delinquents resulted in the taxes being collected, although the delinquents did not pay the money over to the appellant, but paid it to the indulgent tax collector, the appellee, who had, without warrant of law, failed to take any steps whatsoever as required by law to advertise the delinquent lands for sale, or in any respect to comply with the statute in such cases of delinquency."

The chancellor held as a matter of fact that the investigation and activities of the revenue agent were not the sole and proximate cause of the payment of the taxes. In affirming the decision of the chancellor we are not here called upon to decide whether the state revenue agent is empowered under the statutes to attempt the collection of past-due and unpaid taxes when the uncontradicted record shows that the county tax collector is still attempting to collect these same taxes.

In this case the taxes were past due and unpaid. No effort had been made to advertise and sell the lands and no coercive measures had been taken by the sheriff to collect these taxes when the revenue agent made his investigation. Without setting out in detail, however, all of the statutes relating to the duties of the county tax collector, it will be seen by an examination of them that he is required at all times to attempt to collect all past-due and unpaid taxes. He is chargeable with these taxes until he has presented to the board of supervisors at its August meeting a report

of all insolvent and delinquent taxpayers of his county, and has attempted, as provided in that statute, to collect the taxes, but has failed to do so, and that these delinquents have no effects known to him out of which these taxes can be made, and the board, under section 4351, Code of 1906 (section 6985, Hemingway's Code), has examined this report and allowed the sheriff a credit for these delinquents. Even after this, under section 4354, Code of 1906 (section 6988, Hemingway's Code), it is the duty of the tax collector, if possible, to collect these taxes from all insolvent and delinquent taxpayers.

In this case no insolvency report had been made by the sheriff, and he had not asked for any credits as provided for in these two statutes. Under these statutes it is primarily the duty of the county tax collector to collect these taxes. It is further to be noted that under section 4326, Code of 1906 (section 6960, Hemingway's Code), lands cannot be sold for delinquent taxes until the first Monday in April, while personal property liable for a tax may be sold after December 15th by the tax collector, as provided by section 4315, Code of 1906 (section 6949, Hemingway's Code). In this case the revenue agent did not bring suit for the collection of these past-due and unpaid taxes; neither were the taxes paid directly to him.

By section 4739, Code of 1906 (section 7057, Hemingway's Code), it is made the duty of the state revenue agent to investigate the books, etc., of all fiscal officers of the state, county, municipality, etc., and to sue for, collect and pay over all money improperly withheld by any of these officers; and, further, that if the delinquency appears by correct open account on the books, the right of the revenue agent to sue shall arise only after he shall have given thirty days' notice to the delinquent officer to pay over the amounts and he fails to do so. Under section 4744, Code of 1906 (section 7062, Hemingway's Code), in the discharge of his official duties, he is given the power to examine and investigate the books, etc., of any state, county, or other officer. Section 4748, Code of 1906 (section 7066, Hem-

127 Miss.—24

ingway's Code)., as construed by this court, provides for a compensation of twenty per cent. on all amounts collected and paid over by the revenue agent as the result of his investigation or suit.

The first question presented to us, conceding, but not here deciding, that the revenue agent had a right to intervene and attempt the collection of these delinquent taxes, is whether or not, since he did not collect them by suit or any other coercive statutory method, he can claim that they were paid to the sheriff as a direct result of his investigation or activity. We think, unquestionably, that under our statutes the primary duty of collecting these taxes rests upon the county tax collector, and when he is actively attempting to collect taxes, and is collecting taxes, and these taxes are paid to him, then the revenue agent cannot claim that they were paid because of his investigation.

In the case of *Railroad Co.* v. *West*, 78 Miss. 789, 29 So. 475 (relied upon by appellant), the revenue agent had brought suit for the taxes before the county tax collector had made any attempt to collect them. As is shown on page 811 of 78 Miss., on page 476 of 29 So.:

"The revenue agent having begun his suit before the sheriff began his procedure, and that suit being necessary to determine whether the exemption was valid, every reason of law and of public policy maintains the right of the revenue agent to conduct these suits to conclusion, and collect the taxes without interference from the sheriff."

In that case it was also necessary for the court to pass upon the question of the validity of the exemption before the sheriff was authorized to collect any taxes from the railroad company.

The case mainly relied upon by appellant is that of *Adams* v. *Bolivar County*, 75 Miss. 154, 21 So. 608. That was a case where there was a defaulting tax collector. He had failed to pay over at the proper time into the county treasury taxes collected by him and due the county. This defalcation appeared upon the face of his books. The revenue agent, proceeding under section 4739 above referred to,

made an investigation, discovered this shortage appearing there, gave the defaulting tax collector the thirty days' notice to pay over this amount to the county, and upon his failure to do so placed the claim in the hands of his attorneys to bring suit thereon, whereupon the tax collector paid this money into the county treasury. The declaration of the revenue agent in that case alleged that the time fixed by law for the payment of this money into.the treasury of the county had long since lapsed, and, further, that no steps had been taken on the part of the authorities of the county to collect it; that at the time the payment was made to the county authorities the right of the revenue agent to collect the same had accrued, and that he was proceeding to enforce the collection of it, and that the payment was the result of his investigation in the performance of his duty under the law. In that case, in construing section 4199, Code of 1892 (section 4748, Code of 1906; section 7066, Hemingway's Code), it is stated in the opinion that—"Compensation for two things, an 'investigation made' or a 'suit instituted,' is provided for by section 4199 [Code of 1892], when either results in the collection of the money."

And it was held that the revenue agent is entitled to his commission out of moneys not actually collected by him personally and paid over by him personally, but collected and paid over as a result either of his investigation without suit, or of a suit.

"He is to be paid, when successful, for both his 'expenses and his services.' Expenses might be incurred by him both in an investigation and in a suit. Services he could ordinarily render, in the meaning of this statute, chiefly, at least, in the making of the investigation alone; for, that made, he has no 'services' to render, when a suit is instituted, except the merely incidental one of attending to the suit in its progress, conducted for him by attorneys. The legislature meant to pay him for 'his services'—compensate him for work done by him resulting in the collection."

It will be noted in this case from an examination of the opinion that Bolivar county contended that the revenue agent must personally, or through one of his deputies, collect and pay over the money, and, further, that the demurrer admitted that the money was actually paid into the treasury as the result of the investigation of the revenue agent. The court declined to hold to this narrow construction of the statute. In that case the tax collector was a defaulter, his time for making settlements had passed, and the county had taken no steps whatever to collect the money from him. Section 4739, Code of 1906, then in force as section 4191, Code of 1892, makes it the duty of the revenue agent to investigate the books, etc., of county officers, and it further sets forth the steps that he must take to compel a delinquent officer to make settlement, viz.:

"If the delinquency appear by a correct open account on the books of the proper accounting officer, the right of the revenue agent to sue shall arise only after he has given thirty days' notice to the delinquent officer to pay over the amounts and he fails to do so."

The revenue agent gave this notice, and the tax collector failed to pay the funds to the county within the thirty days, after which the revenue agent placed the account in the hands of his attorney for the purpose of suing. In other words, every step as prescribed by section 4739 was taken by the revenue agent in that case except the actual filing of the suit. Though the time had passed for the tax collector to make settlement with the county, he had failed to do so, and neither the county nor any one was attempting to coerce a settlement from this delinquent tax collector at the time the revenue agent began his investigation.

In the case at bar the tax collector was not a defaulter under section 4739, Code of 1906 (section 7057, Hemingway's Code). The investigation of the revenue agent was not made under this section. He was not proceeding under this section to try to collect the taxes from delinquent taxpayers. True he is given the authority to investigate the books of officers both under sections 4739 and 4744, Code

of 1906 (sections 7057, 7062, Hemingway's Code).   The investigation made in this case was made to ascertain the delinquent taxpayers.   In this case the delinquencies involved were shown by tax receipts made out in blank by the tax collector.   These receipts had been prepared by the tax collector for his convenience in collecting the taxes. There is no notice prescribed by the statutes for the revenue agent to give a delinquent taxpayer.   The only coercive statutory provision which the revenue agent may take against this delinquent taxpayer is by suit.   In the *Bolivar County Case supra* the steps to be taken by the revenue agent are prescribed by statute, and this statute was followed.   All was done by him which the statute requires, except the actual bringing of the suit, and these statutory steps so taken were the cause of the settlement of the delinquent tax collector.

In the case at bar the investigation of the revenue agent resulted in nothing that was not already known by the tax collector—in fact this investigation verified the work of the tax collector.   It further showed that the tax collector knew of these delinquencies, and corroborates the testimony, which is in fact uncontradicted, that he was trying to collect the taxes, doing everything in fact short of coercive measures to enforce the collection.   There had been no abandonment of the collection of these taxes by him.   Neither the tax collector nor the revenue agent in this case resorted to coercive measures.   It was primarily the duty of the tax collector to collect these taxes.   The record shows that he was attempting to do so, and that the taxes were actually paid to him.   These facts emphasize the difference between this and the Bolivar County Case. The opinion in the Bolivar County Case states that the decision of that case falls strictly within the principle of *Miller* v. *Delta & Pine Land Co.,* 74 Miss. 110, 20 So. 875, because "the tax collector had entered upon the doing of the acts which entitled him to damages, so here the revenue agent had entered upon and done all that he could ordinarily do." In the Miller Case the tax collector had begun his advertise-

ment under the statute for the sale of the land before the proper amount was tendered him in payment of taxes. This section 2197, Code of 1906 (section 1882, Hemingway's Code), provides for a fee of ten per centum on all taxes collected after the 15th of December by distress or otherwise. The advertisement made by the sheriff was one of the necessary coercive steps for the collection of these taxes or the sale of the lands, and in that case the court held that:

"A collection by resorting to any of the plans named in the statute entitles the officer to the per centum, even though the proceeding is interrupted by payment of the taxes. . . . There is no point in the proceeding, once begun, at which it may be said that the right to the compensation has attached rather than at another. The compensation is given as a unit; it cannot be apportioned. It is given when the collection is made by distress or other proceeding provided by the law, and the proceeding is necessarily also to be viewed as a unit."

In the *Miller Case, supra,* the "other proceeding" provided by the law clearly means some statutory coercive proceeding in the nature of distress proceedings. This is made manifest by examination of the case of *Anderson* v. *Hawks,* 70 Miss. 639, 12 So. 697, which is referred to in the Miller Case, wherein it was held that this ten per centum compensation allowed the tax collector was not in the nature of a penalty, but was allowed as compensation for additional services to be performed by the tax collector, and that when no action had been taken by the collector to coerce payment of the taxes he was not entitled to the per centum. In the Anderson Case the taxes were paid to the collector after the delinquency had occurred, but before any coercive measures were taken by the collector. The collector claimed that he was entitled to the ten per centum because of the delinquency. The court denied this contention as follows:

"Keeping in view the fact that the allowance is made as compensation for services, and that delinquent taxes may be collected: (1) By distress of personal property;

. . . (2) by sale of land; . . . (3) by certifying the assessment to other counties in which the delinquent may have property; . . . (4) by suit; . . . (5) by action on the bond required of transient traders . . .—it is not difficult to discover the meaning of the words 'or otherwise,' which, upon familiar rules, are to be construed as applying to matters *ejusdem generis* as the preceding particular words, a contrary intention not appearing."

The Bolivar County Case cites with approval the Miller Case. The Miller Case cites with approval the Anderson Case. From the Miller and Anderson Cases it is perfectly manifest that the tax collector is not entitled to his ten per centum unless he resorts to some of the coercive methods specifically enumerated in the Anderson Case, and when the Bolivar County case is considered in connection with these two cases it is plain that the revenue agent is not entitled to his twenty per centum, unless he resorts to some statutory coercive method which results directly in the payment of the taxes. The only thing he did in this case which is prescribed by the statute was to make an investigation. This investigation resulted in nothing that was not already known to the tax collector and delinquent taxpayers. In fact the tax collector already knew the facts, and had actually made out a list of those delinquents. The revenue agent obtained this knowledge from the books of the tax collector, consequently this investigation revealed nothing that was not already generally known. Under none of our decisions is the revenue agent entitled to any fees or commissions merely for an investigation.

In the case of *Garrett* v. *Robertson,* 120 Miss. 731, 83 So. 177, the revenue agent actually instituted suits against two banks for past-due and unpaid taxes, and as a direct result of this coercive action of the revenue agent these taxes were paid. In that case we held that the revenue agent was entitled to his commission because he had instituted suit (a coercive proceeding), and as a direct result of the institution of these suits the taxes were paid, citing the Miller and Bolivar County Cases.

The principles enunciated in the case of *Railroad* v. *Love,* 69 Miss. 109, 12 So. 266, are applicable to this case. In that case, under certain statutes, the railroad company was empowered to pay its taxes either to the treasurer of the levee board or the county tax collector. The taxes of 'the railroad company were past due and unpaid. The treasurer of the levee board notified the tax collector to this effect and requested him to proceed to collect these taxes. The sheriff gave notice to the attorneys of the railroad company of the delinquency, and demanded through them the payment of the taxes. He also wrote the treasurer of the levee board not to receive the taxes of the appellant railroad company unless the amount tendered included his ten per centum commission. The railroad company paid these taxes directly to the levee board, but did not include the ten per centum commission claimed by the tax collector. Suit was then instituted by the tax collector against the railroad for this ten per centum. The court, in holding that the tax collector was not entitled to this additional compensation, stated that:

"The compensation provided by our laws for tax collectors was designed to cover cases where collections were actually made by those officers. The remuneration, whether upon taxes paid without default on the part of the taxpayer or upon taxes collected from delinquent taxpayers, is in the way of recompense for services actually performed. . . . The law never contemplated compensation for services never rendered. . . .

"An examination of our statutes shows clearly that there is no provision for commissions where no collections of taxes are made, with the one solitary exception hereinbefore noticed"—which is not in point in this case. This opinion concludes as follows: "We know of no such service by an officer as constructive service. There must be an actual collection of taxes, not a constructive collection, to entitle to compensation."

In the Love Case, by statute, the railroad company could pay its taxes either to the levee board or to the tax collec-

tor. The treasurer of the levee board expressly requested the tax collector to attempt the collection of these taxes, and this he did by calling upon the attorneys of the railroad company to pay the taxes to him and notifying the treasurer of the levee board not to accept payment of these taxes. However, no coercive proceedings were attempted by him in the matter. The railroad company actually paid the taxes to the levee board, and the court in denying the claim of the tax collector therein expressly held that there was no such thing as a constructive collection of taxes. The taxes must be actually collected by the party who is entitled to the commission. Where coercive measures are resorted to which result in the actual payment of the taxes to another than the one resorting to these coercive measures, but paid as a direct result of these coercive measures, then this is an actual collection of the taxes by the party resorting to the coercive measures. This is the holding of the *Bolivar County Case, supra.* In the absence, however, of a resort to coercive measures, when the taxes may be paid to two different officers, then the officer actually receiving the taxes is the one who actually collects them. This is the holding in the *Love Case, supra.*

The only coercive measure by which the state revenue agent can collect past-due and unpaid taxes which have been assessed is found in section 4738, Code of 1906 (section 7056, Hemingway's Code), which empowers him "to proceed by suit . . . for all past due and unpaid taxes of any kind." He did not do so in this case. The sheriff was attempting the collection of these taxes. He had not made his insolvency report and asked to be credited with these delinquent taxes as provided by statute. Primarily it was his duty to collect these taxes. He actually did so. Under these circumstances it was not proper to consider the question as to whether or not the taxes were paid to the sheriff as a result of the activities of the revenue agent which were not coercive statutory activities.

If this question had been proper to be considered in the lower court the burden of proof would have rested upon

the revenue agent to show that the taxes were paid as a direct result of his activities. As a matter of fact, the bill so charged. The proof, however, absolutely failed to sustain this allegation. The only witness who directly testified upon this proposition stated that the notice he received from the revenue agent was not the cause of the payment of his taxes.

The chancellor rendered a decree in favor of the tax collector, and this decree is affirmed.

*Affirmed.*

COOK and ETHRIDGE, JJ., dissenting.

ANDERSON, J. (concurring specially). The majority opinion concedes, for the purpose of the decision, but does not decide, that the right of the revenue agent, and the right of the tax collector to collect the taxes in question were co-equal, and holds that the revenue agent is not entitled to any commission because the taxes were actually collected by the tax collector at a time when the revenue agent had not taken any coercive measure to enforce payment. Assuming the soundness of that premise, I agree with the conclusion reached. But I am unable to concur in its soundness, for in my opinion they did not have concurrent authority to collect. Under the facts of this case the revenue agent had no right to act. He was without authority to collect these delinquent taxes either with or without suit. He had no right to supplant the tax collector, who had the primary right to collect, regardless of how derelict the latter was in his duties. The law has not set up the revenue agent as a censor over the tax collector in the performance of his duties. As long as the tax collector is "on the job," the revenue agent is without authority to act. It is true the statute gives the revenue agent the right to sue for all delinquent taxes, but this statute must be construed in connection with all the other statutes covering his duties, as well, as those covering the duties of the tax collector, and, if possible a consistent, reasonable scheme must be deduced therefrom.

*Railroad* v. *West,* 78 Miss. 789, 29 So. 475, does not stand in the way of this view. The facts of that case show that when the revenue agent sued the Yazoo & Mississippi Valley Railroad Company for taxes due by it, the tax collector, treating the statute exempting it from taxes as valid, had abandoned any idea of trying to collect them. The suit of the revenue agent was to test the constitutionality of this exemption statute, and to collect the delinquent taxes, a suit which the court in that case held the tax collector had no right to bring, and that he was justified in treating the statute as valid. The revenue agent did not oust the tax collector from the functions of his office and take charge, as was attempted to be done in the case at bar. On the contrary, he rightfully surrendered to the revenue agent an undertaking which under the law he was inadequate to perform.

· Furthermore, section 4738, Code of 1906 (section 7056, Hemingway's Code), which confers the power on the revenue agent to sue for all past-due and unpaid taxes, expressly limits that power to such suits as under the law the state, county, municipality, or levee board has the right to bring. That qualifying clause of the statute is in this language:

"And shall have a right of action and may sue at law or in equity in all such cases where the state or any county, municipality or levee board has the right of action or may sue." ·

Could the county have sued for these taxes while they were in process of collection by the tax collector, and before the latter's delinquent list was due to. be filed for allowance by the board of supervisors? I think not. To permit such interference by the board of supervisors might mean frequent conflict of authority and great confusion in the financial affairs of the county. This view does not mean that where any one or more delinquent taxpayers had refused to pay their taxes, and proposed to contest their legality (as in the *West Case, supra*) the county or the

revenue agent could not sue, provided the tax collector had abandoned any effort to collect.

It is inconceivable that the legislature intended to give the revenue agent the power to sue every taxpayer in the state who has failed to pay his taxes on or before the 15th day of December, notwithstanding the tax collector may be performing their duties in the usual and customary manner, although not in strict compliance with the law.

I agree with the dissenting opinion that the revenue agent is entitled to his commission without suit where he is rightfully exercising the authority conferred on him by law, and that the power to sue carries with it the power to collect without suit.

I concur in the affirmance of the case, but not entirely in the reasoning of the majority opinion by which that result is reached.

ETHRIDGE, J. (dissenting). I find myself wholly unable to agree with the opinion of the majority in this case. Some further statement of the case and reference to certain statutes will be necessary to make my conclusions understood clearly, and, as I think, make the case properly understood by the bar.

The suit was filed in 1917 for the taxes of the year 1916. The land roll upon which the present suit is based was made up and duly approved in 1915, and the taxes for that year collected partly by the outgoing sheriff, who went out of office on January 1, 1916, and partly by the defandant, who assumed office on that date and completed the collection for that year. The only assessment made in 1916, was the assessment of personal taxes. At the legislative session of 1916 the tax commission was created, and its duties prescribed by law, and under that act it was necessary for the tax commission to approve the assessment of personal property, but it had nothing to do with the assessment of real property. The assessment roll was turned over to the sheriff prior to November 22, 1916, and be began collecting taxes upon that date. By the 1st of December, 1916,

he had collected ten thousand, six hundred eighty-five
dollars. The total amount of taxes according to the proof
would be about two hundred thousand dollars, and on the
sheriff's evidence about ten per cent. of that amount had
been collected on January 1, 1917. From January 1, to
February 1, 1917, he collected about thirty-three thousand,
one hundred ninety-six dollars, and testifies that all taxes
were supposed to be collected by then. In February, 1917,
he collected twenty-nine thousand, thirty-nine dollars and
fifty-one cents. In March, 1917, he collected sixteen thou-
sand four hundred sixty-four dollars and fifty-two cents.
In April, 1917, he collected nine thousand, six hundred
ninety dollars and seventeen cents. In May he collected
nine thousand, sixty-eight dollars and seventeen cents. In
June, 1917, he collected six thousand, five hundred forty-
five dollars and ninety-four cents. The sheriff neither levied
distress on personal property for the taxes involved in the
suit after December 15th, nor did he advertise the land
involved in the tax receipts involved in this suit, nor at
all until after the revenue agent's investigation and notice
to him and to the boards of supervisors.

The sheriff testified that people offered to pay their taxes,
that checks were sent in letters, and said letters were un-
answered, or many of them unanswered, on the 1st of
April, 1917; that, after answering these letters, they made
up a list of tax receipts of the taxpayers involved in the
present suit, and dated said tax receipts as of date Feb-
ruary 1st, 1917, and that none of the taxes involved in the
present suit were paid on February 1st or at any other
time prior to the demand of the revenue agent. The tax
collector did not make any written report to the board of
supervisors of these delinquencies, nor did he seek to se-
cure an order to sell the said lands at a later date, and
had taken no steps other than to send out a few notices
prior to the date the investigation of the revenue agent was
made, and notice served upon him of the delinquencies and
demand made upon him by the revenue agent for possession
of the office and books for the purpose of collecting the

taxes. The sheriff attempted to justify the delay and fail-
ure to advertise the lands on the ground that the land rolls
had certain lands doubly assessed and lands assessed to
parties who did not own the lands in certain cases. The
delinquents involved in the present case whose taxes had
not been paid at the time the revenue agent made the in-
vestigation and made demand upon the board of super-
visors and the tax collector were landowners, and most
of them large property owners, many of whom lived in the
county site and in other towns within the county easily
accessible to the tax collector. The two deputy sheriffs
working under the tax collector were delinquent for their
taxes, and paid the same after the notice by the state rev-
enue agent of his investigation.

The revenue agent obtained information from the audi-
tor's office in Jackson, Miss., that the tax collector of Copiah
county had not settled with the state for the taxes charged
against him, and about July 23, 1917, the revenue agent
sent his deputy to investigate the matter, he having at said
time other persons and accountants working on the records
of that county in other matters. The deputy revenue agent
went to the sheriff's office, called for the books which were
turned over to him, and found a large number of tax re-
ceipts made out, but unsigned, dated February 1, 1917,
and embracing lands assessed to the owners, and he took
the cash-books and the other records of the office and check-
ed them against the tax receipts, and found the charges
about which the suit was instituted, and made up a list of
the persons and the amounts due, and served it upon the
sheriff on July 28, 1917, and also filed a copy with the
board of supervisors. While making the investigation, and
on or before the 28th of July, 1917, the deputy revenue
agent had notices printed in the county site of Copiah
county to the several delinquent taxpayers, and returned
to Jackson, Miss., with such notices, and they were mailed
out on the 29th of July, 1917.

No report is shown to have been made to the board of
supervisors in writing by the sheriff, and no corrected as-

sessment roll was ever attempted to be made by the board of supervisors, nor was anything done, so far as the records show, in correcting the assessments upon which the taxes were fin..lly paid to the sheriff. When the deputy revenue agent made demand upon the sheriff for the books and office for the purpose of collecting the taxes, the sheriff took counsel and refused to permit the revenue agent to occupy h:. office or to have possession of the books for that purpose. After receiving notice from the revenue agent the sheriff got busy and the delinquents also got busy after receiving the notices from the revenue agent, and paid the taxes to the sheriff, and not to the revenue agent. When the taxes were collected the revenue agent made demand upon the sheriff for his commission, which the sheriff refused to pay, and this suit was brought against the sheriff personally and officially for such commissions collected by the sheriff after the service of the notices aforesaid and after the investigation of the books by the revenue agent and his deputy.

I desire to notice some of the statutes bearing on the controversy.

Section 4264, Code of 1906 (section 6898, Hemingway's Code), requires the taxpayer to furnish a list of his taxable property to the tax assessor.

Section 4270, Code of 1906 (section 6904, Hemingway's Code), prescribes the form to be furnished the taxpayers for their information and convenience in rendering their assessable property for taxation.

Section 4271, Code of 1906 (section 6905, Hemingway's Code), requires the tax assessor to call attention to the oath appended to this list; and section 4276, Code of 1906 (section 6910, Hemingway's Code), requires the assessor to report all persons to the board of supervisors who in his opinion have not made a correct assessment.

Section 4282, Code of 1906 (section 6916, Hemingway's Code), requires the land of the county to be accounted for on the roll.

Section 4290, Code of 1906 (section 6924, Hemingway's Code), provides the assessor shall not be paid unless the whole county is upon the assessment roll for land assessment, and requires the board of supervisors to carefully examine the roll with a view to the enforcement of this provision.

Section 4291, Code of 1906 (section 6925, Hemingway's Code), provides that the assessor shall make oath appended to his roll showing that he has faithfully endeavored to assess all persons and property in his county.

Section 4293, Code of 1906 (section 6927, Hemingway's Code), gives the board of supervisors power to extend the time for filing the roll if it finds the assessor capable, but that he has failed to complete and return his assessment, etc.

Section 4294, Code of 1906 (section 6928, Hemingway's Code), requires the board of supervisors to examine the roll at its July meeting to see if the new assessment is necessary.

Section 4296, Code of 1906 (section 6930, Hemingway's Code), provides a privilege of taxpayers to appear and object to the assessment roll, and provides that all persons who fail to file objections shall be concluded by the assessment and precluded from questioning its validity after its approval, excepting only minors and persons *non compos mentis.*

Section 4299, Code of 1906 (section 6933, Hemingway's Code), provides what land may be reassessed and how.

Section 4301, Code of 1906 (section 6935, Hemingway's Code), provides that this order for assessment shall be made on the first Monday of July, or the first Monday of August of the year, and that the new assessment, if made, shall be completed within such time as may be allowed, not exceeding ninety days.

Section 4303, Code of 1906 (section 6937, Hemingway's Code, requires notice of the return and filing of the roll to be given by publication, and charges all persons with notice of the filing of the roll and with notice of the time within

which to file objections, and the time when the board of supervisors will hear the same, and of its power to raise the assessment thereof.

Section 4308, Code of 1906 (section 6942, Hemingway's Code), provides for the hearing of objections and the approval of the roll, and requires the board of supervisors at the time mentioned to make all corrections.

Section 4308, Code of 1906 (section 6942, Hemingway's Code), provides for the roll to be sent to the auditor of public accounts for approval, and that if incorrect that he shall return it to the board of supervisors for correction.

Section 4312, Code of 1906 (section 6946, Hemingway's Code), provides how changes in the assessment roll may be made.

Section 4314, Code of 1906 (section 6948, Hemingway's Code), reads as follows:

"On receipt of the assessment rolls the collector shall immediately proceed to collect the taxes, adding the county tax due by each person to his state tax, and collecting all together; and it shall be the duty of every person assessed to pay his taxes to the collector on or before the fifteenth day of December."

Section 4315, Code of 1906 (section 6949, Hemingway's Code), reads as follows:

"All taxes remaining unpaid on the fifteenth day of December, shall immediately be collected by the collector, by distress and sale of any personal property liable therefor; and such sale shall take place at the courthouse door, unless the property distrained be too cumbrous to be removed; and five days' notice of the time and place of sale shall be given by advertisements put up in three public places in the county, one of which shall be at the courthouse door; and the collector shall be allowed to collect and retain, in addition to the taxes, fees and costs, all necessary expenses of removing and keeping the property distrained."

Section 4316, Code of 1906 (section 6950, Hemingway's Code), provides that persons delinquent for poll taxes

shall be published on or before the 1st day of·March of each year, with alphabetical lists of all persons subject to poll tax who have not paid the same on or before the 1st day· of February of each year, and that such lists shall be sworn to by the tax collector.

Section 4323, Code of 1906 (section 6957, Hemingway's Code), provides for the keeping of a cashbook by the tax collector, in which he shall enter the number of each tax receipt issued by him, the name of the person being taxed, and the amount paid, etc.

Section 4324, Code of 1906 (section 6958, Hemingway's Code), provides he shall present this cash book to the board of supervisors when required, and upon final settlement with the auditor of public accounts, etc.

Section 4326, Code of 1906 (section 6960, Hemingway's Code), reads as follows:

"After the fifteenth day of January the tax collector shall advertise all land in his county on which the taxes have not been paid, or which is liable to sale for other taxes, for sale at the door of the courthouse of his county on the first Monday of April following; such advertisement shall be inserted for three weeks in some newspaper published in the county, if there be one, but in counties having two court districts the land shall be advertised and sold in the district in which such lands are situated, and be put up at the courthouse door, and shall contain a list of the lands to be sold in numerical order as they are contained in the assessment roll, in substance as follows: Name of Owner. Division of section. Section. Township. Range. State Tax. County Tax. Total Tax—or by such other designation as it may be assessed. Land in cities and towns shall be described in the advertisement as it is described in the assessment rolls." ·

Section 4328, Code of 1906 (section 6962, Hemingway's Code), provides for the sale of land for taxes remaining unpaid.

Section 4350, Code of 1906 (section 6984, Hemingway's Code), provides that the tax collector, if the taxes assessed

are not paid when due, and if he cannot find sufficient real and personal property upon which to collect the same, shall ascertain who are indebted to the person liable for taxes and, make a list thereof and advertise the indebtedness for sale at the courthouse door, giving five days' notice of the sale of said indebtedness for the taxes.

Section 4343, Code of 1906 (section 6977, Hemingway's Code), provides that notice be given to the debtor of such taxpayer which shall bind the debt in his hands, etc.

Sections 4346-4348, Code of 1906 (sections 6980-6982, Hemingway's Code), provide for refunding erroneous payments and double payments.

Section 4350, Code of 1906 (section 6984, Hemingway's Code), provides that the tax collector shall present to the board of supervisors at its meeting on the first Monday of August of each year a report of all insolvent and delinquent taxpayers in his county, with the amounts due from each, which report shall be verified by affidavit of the collector that he has made in person or by deputy a legal demand for the taxes of all delinquent taxpayers in his county by going to their places of abode or business and searching for something to seize and sell for taxes, and that the said taxpayers have not paid their taxes and have no effects known to him to pay the same, and that he has made diligent inquiry of such delinquents as have not been found, and cannot find them in his county, and that they have no effects known to him which can be made to pay the taxes.

These statutes show absolutely that the tax collector was in default, and that no legal excuse existed therefor. It was clearly his duty to comply with these sections, and he had no right or power to change the assessment, and neither did the the board of supervisors, except as authorized by these sections, and there never was any attempt to comply with them. The tax collector had in legal effect abdicated the office to which he was elected so far as his tax-collecting duties were concerned. The taxes were to be paid on or before the 15th day of December. If not paid by that time the sheriff was required to distrain and sell per-

sonal property, if any could be found to satisfy such taxes. If such taxes were not paid by the 15th day of January, he was to advertise the land belonging to the defaulting taxpayer, and he clearly did neither, and made no effort or movement so to do. And he should have published prior to March every delinquent taxpayer as required by law, and then should have resorted to the method provided for the sale of debts owing to the taxpayer, which was not done, and for which no excuse is given.

When the assessment roll was made up by the assessing authorities and approved, the same became binding, and it was clearly the duty of the sheriff to conform to the law. No responsibility attached to him for any mistake in the roll. So in this case we say that the taxes were past due and unpaid, and that the tax collector was making no effort and had made no adequate effort to collect them; the state and county were entitled to the taxes due them.

Section 4738, Code of 1906 (section 7056, Hemingway's Code), reads as follows:

"The state revenue agent may appoint a sufficient number of deputies. He shall have power and it shall be his duty to proceed by suit in the proper court against all officers, county contractors, persons, corporations, companies, and associations of persons for all past-due and unpaid taxes of any kind whatever, for all penalties or forfeitures for all past-due obligations and indebtedness of any character whatever owing to the state, or any county, municipality or levee board, and for damages growing out of the violation of any contract with the state or any county, municipality, or levee board, and shall have a right of action and may sue at law or in equity in all such cases where the state or any county, municipality or levee board has the right of action or may sue. And in all cases of valuation or ownership of property which has escaped taxation, may have subpoenaed witnesses to testify before the board of supervisors, board of mayor and aldermen, or levee board."

Section 4739, Code of 1906 (section 7057, Hemingway's Code), reads as follows:

"It is the duty of the state revenue agent to investigate the books, accounts and vouchers ·of all fiscal officers of the state, and of every county, municipality and levee board, and to sue for, collect and pay over all money improperly withheld from either, and he has the power to sue and right of action against all such officers and their sureties to collect any such moneys; but if the delinquency appear by a correct open account on the books of the proper accounting officer, the right of·the revenue agent to sue shall arise only after he has given thirty days' notice to the delinquent officer to pay over the amounts and he fails to do so. And the right of the revenue agent to sue shall terminate after the lapse of four years from the expiration of the term of any officer. And if he shall examine the books, accounts and vouchers of any fiscal officer of the state, county, municipality or levee board, and find them correct, he shall give a certificate to that effect, one to such officer, and file one with the auditor of the state, or board of supervisors of the proper county or with the mayor and aldermen of the proper municipality or with the proper levee board."

It will be noted from these sections that the revenue agent is given power and it is made his duty to investigate the books, accounts, and vouchers of all fiscal officers of the state, and to collect, sue for, and pay over all moneys improperly withheld from either. The investigation is as much a part of his duty as the bringing of suits. · In section 4748, Code of 1906 (section 7066, Hemingway's Code), his commissions are fixed, and the commission so given is not only to cover compensation for suits brought, but is also to compensate him for investigations made. When he investigated the books and found unpaid and uncollected taxes due to the default and negligence of the tax collector, he had done a service for the state and county for which he was entitled to compensation. It is the policy of the state that the revenue agent shall not have a salary, and that he shall not be paid anything except when the result

of his work brings something into the state, county, or municipal treasuries. There is much investigation which he must do at an enormous expense, for which he can receive no compensation at all because the accounts of the officers are correct. Where the officers have performed their duties honestly and faithfully and have kept their books in the manner required by law, the state revenue agent receives nothing for the work he does for the state, county, or municipality in investigating such books. But if the result of his investigation show a failure of duty by the tax collector and result in securing for the state, county, or municipality the moneys to which they are entitled, he is due his compensation, and is entitled to his commission, even though he brings no suit.

Section 4749, Code of 1906 (section 7067, Hemingway's Code), provides that where a revenue agent sues delinquent taxpayers he shall make the tax assessor and tax collector parties to such suit, and if it appear that the failure of the taxpayer to properly pay his tax was caused by any willful default or negligence of the tax assessor or tax collector, judgment shall be rendered against the defaulter or defaulters for the amount of the compensation of the revenue agent.

In the present suit the revenue agent made demand upon the sheriff and upon the board of supervisors, and upon the delinquent taxpayers. The proof shows to the reasoning mind that it was this demand of the revenue agent that produced the result, and not any activities of the tax collector. As soon as the demand of the revenue agent was made the taxes began to pour in. The sheriff had made demands from time to time, but with practically no results, and the deputy sheriff told the deputy revenue agent when he made demand for the books, stating that it was his purpose to collect the taxes, that in the opinion of the deputy sheriff the revenue agent would have no better success than they had had.

In *Miller* v. *Delta & Pine Land Co.*, 74 Miss. 110, 20 So. 875, this court made plain that when an officer charged with

the duty of collecting taxes had performed a part of their duty and were proceeding in the discharge of their duty, they were entitled to the commissions prescribed by law for their services, and distinguished between that case and that of *Anderson* v. *Hawks,* 70 Miss. 639, 12 So. 697, by saying:

"A collection by resorting to any of the plans named in the statute entitles the officer to the per centum, even though the proceeding is interrupted by payment of the taxes. The sum given by the statute cannot be apportioned, and a larger or smaller amount, in proportion to the work done, be awarded as on a *quantum meruit;* the collector is entitled to all or none. There is no point in the proceeding, once begun, at which it may be said that the right to the compensation has attached rather than at another. The compensation is given as a unit; it cannot be apportioned. It is given when the collection is made by distress or other proceeding provided by the law, and the proceeding is necessarily also to be viewed as a unit."

A careful reading of the case of *Miller* v. *Delta & Pine Land Co., supra,* will convince the reader, it seems to me, that when an officer performs and is performing a part of his duty for which he is allowed compensation, he cannot be defeated of his just rights by the adversary person taking some steps before the full duty is performed. In that case the sheriff had merely advertised property for sale, and the question was whether he was to be allowed his full fee of ten per cent., where the taxpayer had come in and paid before the sale was consummated.

In the case before us now no suit could be brought until there was an investigation. The facts had to be ascertained before it could be determined what to sue for or whether any suit at all would lie. A suit when filed is merely a demand for the payment of the taxes. Until the trial or judgment is entered, nothing more than a demand has been made. The revenue agent made demand, and also made the investigation, which disclosed to him, and through him

to the state and county, the real trouble in the sheriff's office. Of course the sheriff must have known how the situation stood, but neither the county nor state seems to have known how matters stood.

In *Anderson* v. *Hawks,* 70 Miss, 639, 12 So. 697, no action had been taken by the sheriff whatever; no investigation had been made; no fact had been determined; and the court said that the law did not pay gratuitous fees; that the officer's compensation was for some duty done or performed.

In *Adams* v. *Bolivar County,* 75 Miss. 154, 21 So. 608, the court held that the state revenue agent was entitled to his fees for investigating and giving notice and preparing to file suit against a delinquent officer when the officer had before the filing of the suit paid the money, but had failed to pay it within the time prescribed by law for it to be paid. In this case the court quoted from the *Miller Case, supra,* and then said (75 Miss. 162, 21 So. 610) :

"The investigation is as much a part of the proceeding for collection as the suit, and here, no more than there. can the compensation be made to depend upon the will of the delinquent.

"It is a grave misconception to suppose that strict construction of this legislation—sticking in the bark and emasculating its plain spirit and scope—is a construction in the interest of the state. The very reverse is true. The interest of the state and of her revenue agent in this matter is identical. He gets nothing if nothing is collected. He gets his twenty per cent. only when the public revenues get their eighty per cent. The discharge of his duties— unpleasant ones, doubtless, in the extreme—brings terror to no honest fiscal officer, and the dishonest are not the objects of this legislation's tender regard. He is a public officer, elected by the people, serving the people, aiding in keeping down their taxes, teaching fiscal honesty in the school of legal compulsion to those who will learn in no other, and who prefer paying the high tuition exacted in that school to being honest for honesty's sake."

In discussing the legislation pertaining to the revenue agent's office the court, in *Adams* v. *Kuhn,* 72 Miss. 276 at page 280, 16 So. 598, at page 598, the court said:

"In the execution of the legislative scheme the revenue agent is the directing, impelling agency provided for to put in action the officers and machinery contemplated by the Constitution. He is the state's agent to compel action by other officers, in order that the constitutional scheme by which all property was intended to bear its equal portion of taxation shall be effectuated. To accomplish this purpose, it is as necessary that the machinery once set in motion shall be kept going until the end is reached, as it is that motion shall be inaugurated. By the Code provisions it was intended and provided that the desired result should be secured in the name and by the action of the revenue agent, and it could not be doubted that the agent was a 'party' to whom the right of appeal was given by section 4193 of the Code. Section 3 of the act of 1894 is, as we have said, a mere change of the Code provisions to disembarrass the general plan and purpose of the legislature from constitutional objection pointed out in the decision in the *Tonella Case* [70 Miss. 701]. We cannot doubt that the appeal it provides was intended for the revenue agent on the one side and for the party whose property or calling was intended to be taxed."

In *Y. & M. V. R. R. Co.* v. *West,* 78 Miss. 789, 29 So. 475, this court held specifically that taxes were due and unpaid on the 16th day of December, and that under the law making taxes a debt due by the taxpayer suit could be maintained on that date; that the act of 1894 removed the limitation of one year provided under the prior laws, and that the suit could be maintained as soon as the taxes were past due and unpaid; that the tax collector had from the time the rolls were. turned over to him until the 15th day of December in which to collect the taxes, and the taxpayer had that time in which to pay such taxes,. and if they were not paid within that time that suit could be maintained by the revenue agent; that the tax collector had no power

to sue for taxes; and that the effect of the statute making the taxes a debt was to create an additional right and remedy. See, also, *Delta & Pine Land Co.* v. *Adams*, 93 Miss. 340, 48 So. 190, along the same line and for a full discussion of this feature of the case.

In *Brougher* v. *Conley*, 62 Miss. 358, the court specifically held that the board of supervisors had no authority to postpone the land sale for taxes provided by law, and that a sale made under such postponed sale was void notwithstanding section 558 of the Code of 1880. It was said in that case:

"This is a valuable provision, but was not intended to arm a board of supervisors with the dispensing power as to the laws enacted for the collection of public revenues. Such a construction would make it the instrument of incalculable mischief. The object and scope of the section is to provide for the case of a failure from any cause to sell land for taxes at the time prescribed by law.

"If after the time fixed by law for sale of land for taxes it appears that any land liable to such sale was not sold, as it should have been, it may be sold by order of the board of supervisors. The section sprang from the apprehension that by inadvertence or oversight some land might escape sale at the regular time, and was intended especially for such cases."

In *Garrett* v. *Robertson*, 120 Miss. 731, 83 So. 178, it was held that the revenue agent was entitled to his commission where he had filed suit even though the tax was paid to the sheriff and not to the revenue agent.

In *Harrison County* v. *Robertson*, 121 Miss. 387, at page 396, 83 So. 617, at page 618, it is said:

"It is likewise true that the voluntary payment of taxes by delinquent taxpayers to the tax collector, instead of to the revenue agent, makes no difference in the right of the revenue agent to demand his commissions, provided only that the taxes were paid as a result of a demand and litigation instituted by the revenue agent."

For a further discussion of the rights of the revenue agent see *Robertson* v. *Monroe County,* 118 Miss. 520, 79 So. 184.

I think that the propositions announced in the majority opinion that the institution of suit is the only method by which the revenue agent can recover compensation is not only erroneous, but will result practically to the detriment of the taxpayer by forcing him to pay the court costs in addition to the demands of the state, county, and municipality for their taxes. Manifestly if the revenue agent must investigate the books in all cases without compensation unless he filed suit, and being charged by law with the making of investigations, he will necessarily be compelled to institute suits before making demands upon the taxpayers. It is contrary to the conception of the law as heretofore administered. The larger part of the collections through the revenue agent's office have been made as a result of notice and demand without suit, but if suit must be filed to entitle the revenue agent to his commissions, necessarily he will have to bring suit, which itself is only a demand in all cases to obtain his compensation for the duties performed.

As stated above, I think the investigation is a necessary step, and that alone is sufficient to authorize the payment of the revenue agent's commissions when the money is actually collected as a result of his investigations and activities. I cannot agree with the majority that it is incompetent to show by proper evidence that taxes were paid as a result of the revenue agent's activities. Of course, in most cases you must judge from the facts. What the revenue agent did, and what the taxpayer did, and what the tax collector did, are to be taken and considered, and logical deductions drawn therefrom, but this does not preclude the showing by evidence that the taxpayer paid the taxes as the result of the investigation and demand of the revenue agent.

COOK, J., concurs in this dissent.