GULLY, STATE TAX COLLECTOR, *v.* LINCOLN COUNTY.

(In Banc. Jan. 23, 1939.)

[185 So. 795. No. 33454.]

(In Banc. March 6, 1939.)

[186 So. 830. No. 33454.]

**R. H. Dale**, of Columbia, for appellant.

**Hugh V. Wall** and **R. L. Jones,** both of Brookhaven, for appellee.

**R. H. Dale,** of Columbia, and **Sidney L. McLaurin,** of Brandon, for appellant on Suggestion of Error.

**Griffith, J.,** delivered the opinion of the court.

The Denkman Lumber Company, a corporation, was the owner of certain real and personal property in Lincoln County upon which taxes for the year 1933 had been legally assessed, these taxes amounting in the aggregate to the sum of $3122.21. The record does not disclose what part thereof was on the realty and what part on the personal property. The owner did not pay any part of these taxes on or before February 1, 1934, nor on or before May 1, 1934; and before the action by the state tax collector, next to be mentioned, the sheriff had taken no steps to distrain and sell the personal property or to sell the realty, although otherwise the sheriff was actively engaged in receiving and collecting taxes.

On June 4, 1934, the appellant state tax collector filed an action in the circuit court in said county against the taxpayer demanding a personal judgment against it for the stated amount of taxes. On July 31, 1934, the owner paid to the sheriff $2690.05 on said taxes, and after the sale of some of the property on the third Monday in September, 1934, the owner paid the remainder by way of redemption. Thereupon the first action by the state tax collector was dismissed.

The present action is by the state tax collector to re-

cover his alleged twenty per cent commission on $2100.45, being that part of the $2690.05 which went to the county. On the trial the circuit court denied recovery and dismissed the action; and the state tax collector has appealed.

As heretofore held by this Court, see Enochs v. State ex rel. Robertson, 133 Miss. 107, 143, 97 So. 534, there is an implied requirement in Section 135, Constitution, 1890, and ad valorem state and county taxes shall be collected by the sheriff. In consequence, it was expressly stated in Robertson v. Shelton, 127 Miss. 360, 369, 90 So. 83, that it is primarily the duty of the county tax collector, that is to say the sheriff, to collect these taxes. Since this primary duty is one implied in the Constitution itself, no statute can make it a primary duty of some other officer.

It follows, therefore, that no other officer can be allowed to intervene in the matter of such collection until the elapse of the full time which the law has allowed to the sheriff as county tax collector to pursue and complete the means which he has under the law to enforce the collections, that is to say, under the usual and normal plan or scheme provided by the general statutes on that subject. For if any such intervention were previously allowed, the duty of the sheriff as a primary constitutional duty would be subverted into one which is inferior or subordinate to that of the intervening statutory officer. It would be, indeed, to permit a statutory officer to exercise a superior authority of censorship over a constitutional officer in respect to the constitutional duties of the latter, and in a measure to displace him if, in the judgment of the statutory officer, the constitutional officer was not proceeding with the discharge of his duties as diligently as the statutory officer deemed proper or requisite. If loss should occur to the state and county by reason of inexcusable negligence on the part of the sheriff, the proper remedy would be by suit against the sheriff and his bondsmen, not by attempting to take over the duties of collection, which, up to the time stated herein, belong to the constitutional functions of the sheriff.

The full time allowed to the county tax collector to pursue and complete the means furnished him by the law for the full collection of state and county ad valorem taxes on land does not expire until the time for the making of the sales of the land. Such a period does not become one of finality, under the usual and normal plan or scheme of collection and the enforcement thereof until after the completion of the sales begun on the third Monday in September.

There remains the question as to state and county ad valorem taxes on personal property. Section 1, Chapter 383, Laws Ex. Sess. 1932 and Section 1, Chapter 188, Laws 1934, provide that the first installment of ad valorem taxes, real and personal, shall be paid on or before the first day of February of each year, and the second and third installments on or before the first day of May and the first day of August next succeeding. And Section 5 and Sections 7 and 8 of said acts, respectively, provide that the default in the payment of the first installment shall mature all installments, and that thereupon "the tax collector shall proceed immediately to collect all installments of taxes then remaining in default and unpaid, by distress and sale of personal property liable therefor." Sections 5 and 9, respectively, of said acts provide further, however, that "any taxpayer in default may at any time prior to the sale of his property, real or personal, for such taxes pay the delinquent installment or installments of such taxes plus all fees, interest and costs accrued, and all necessary expenses and reinstate his installment payments and the balance of his installments of such taxes shall be due and payable as if such taxpayer had not been in default."

It is apparent from the above provision that the power of the sheriff to make a sale of personal property under distraint for taxes is not with him as a finality until after August 1st. Up to that time the taxpayer has the right and power to interrupt and discontinue any such authority or any sale attempted thereunder. The sheriff has no final power, within his own hands, prior to August 1st

to complete the means furnished him by law for the full collection of ad valorem taxes on personal property—or upon real property as for that matter—and hence, under the principle heretofore stated, the state tax collector is not authorized to intervene previously to the first day of August, nor for such a period of time thereafter as will be required for the sheriff to give the necessary notice and make the sale of the personal property in the manner required by law in the case of such sales.

And since there is as much, or even more reason to give the sheriff until the third Monday in September to distrain and sell personal property as there is to give him until that time to sell lands, and because it is desirable that these periods be made definite instead of being left in a state of doubt, we hold that as to personal property ad valorem taxes the state tax collector is without authority to intervene until after the third Monday in September.

The suit having been instituted by the state tax collector in June, it was premature, and no obligation to him by the county was thereby brought into existence; wherefore the judgment of the trial court was correct and must be affirmed.

It is to be noted that we are not here dealing with a case where the taxpayer has denied all liability, as, for instance, where he claims an exemption, or that the assessment is void, or that for any alleged reason the warrant of the assessment is invalid, or the like. Cases of that kind will be dealt with as they arise.

Affirmed.

**Ethridge, J.,** delivered a dissenting opinion.

I think that the appellant in this case should have recovered his commissions paid into the county treasury, after the suit was brought by the State Tax Collector on June 4, 1934, for the taxes in default for the year 1933. Section 1 of chapter 188, Laws of 1934, makes the due date of the taxes February first as to half of the taxes, and the other half may be deferred, half thereof to be

paid in May, and the other half in August of the year in which they are due. But by section 7 of the act it is expressly provided that, "The failure to pay the taxes due and collectible as provided in this act, promptly on the due dates herein fixed, shall mature all taxes levied and assessed during any year then remaining unpaid." Here the taxes were due and in default, and the period within which the sheriff was required to act in such cases had fully passed before the suit was filed. Therefore, both the taxpayer and the sheriff and tax collector had forfeited any rights they had, and the right of the State Tax Collector to bring suit under the section making taxes a debt collectible by suit, and the section of the Code, hereafter referred to, giving the State Tax Collector power to sue for all due and unpaid taxes of any kind, had fully accrued, and he had taken the steps to coerce the payment of the taxes. Consequently, his right to bring the suit existed, and having brought it, and thereby caused the taxpayer to make the payment, he is entitled to his commission from the taxes collected, under the powers and duties of his office.

The taxpayer has from the date on which the rolls are placed with the sheriff, or from the fifteenth of December until the first day of February, in which to pay his taxes. But he is obligated to pay them by February first—or at least half of them—and if he fails to pay half on that date, then under the provisions of section 7, above quoted, the entire amount becomes due, and the tax collector should at once proceed to collect it by distress.

Section 8 of chapter 188, Laws of 1934, provides: "Upon default of the payment of any taxes upon the due dates prescribed in this act, the tax collector shall proceed immediately to collect all installments of taxes then remaining in default and unpaid, by distress and sale of any personal property liable therefor; and such sale shall take place at the courthouse door, unless the property distrained be too cumbersome to be removed; and five days notice of the time and place of sale shall be given by advertisements put up in three public places in the

county, one of which shall be at the courthouse door; provided, however, that sales for delinquent municipal taxes shall be advertised in the manner and made at the place designated by ordinances adopted by such municipalities. The collector shall be allowed to collect and retain in addition to the taxes, interest, fees and costs, all necessary expenses of removing and keeping the property distrained. If sufficient personal property liable for taxes cannot be found by the tax collector, the tax collector may make a list of indebtedness due the taxpayer by other persons and sell the same as hereinafter provided. It shall be the duty of the tax collector to enforce the provisions herein contained, and to collect all the taxes due by distraint and sale of personal property; and for any taxes levied against any lands due and remaining unpaid, after the 15th day of February and the 15th day of August the land shall be sold as provided by laws for the sale thereof.''

Under this section it is the duty of the tax collector to collect by distress all installments of taxes in default, and to seize and sell the property of the tax payer, as therein provided.

In section 20 of the act it is provided: ''If the taxes assessed shall not be paid when due, and sufficient real and personal estate cannot be found on which to levy the same, the collector shall ascertain who are indebted to the person liable for the taxes, and shall make a list thereof, and advertise the indebtedness for sale at the courthouse door, giving five days' notice in the manner prescribed for the sale of personal property distrained; and shall sell the indebtedness, of whatever kind, or so much as may be necessary to pay the taxes and costs, to the highest bidder, for cash, and make to the purchaser an assignment thereof.''

By section 4 of the act nothing in the preceding sections (1, 2 and 3) shall be construed to authorize the Board of Supervisors, or the authorities of any municipality, or other taxing district, to levy taxes in violation of any contract entered into prior to the passage of this act.

Which means that if the taxpayer has contracted to pay the taxes by the first of February, or any other named date, postponement cannot be made.

In section 6 it is expressly made the duty of every person assessed with state, county and municipal ad valorem taxes to pay all such taxes to the tax collector on or before the due dates fixed in section 1 of the act; and if not paid, it shall be the duty of the tax collector to enforce payment thereof, as thereinafter provided. And "If any person fails or neglects to pay the taxes levied and assessed against him as provided in this act on or before the due dates fixed in section 1 of this act, he shall be required to pay, in addition to the amount of taxes then due, all other fees, penalties and costs prescribed by law for failure to pay taxes when due, and in addition to the interest prescribed in the next preceding section of this act."

Under this section, when the taxpayer made the payment here involved after the suit was filed by the State Tax Collector, under the provisions of this section he was required to pay the fees of the Tax Collector, in addition to the penalty and costs prescribed for his default. By no construction of the whole act can it be held, I think, that the taxpayer can pay default installments without paying all the costs which have accrued to any authorized tax collector, in attempting to collect the taxes.

Section 9 expressly carries this idea, I think. It reads: "Any taxpayer in default may at any time prior to the sale of his property, real or personal, for such taxes pay the delinquent installment or installments of such taxes plus all fees, interest and costs accrued, and all necessary expenses and reinstate his installment payments and the balance of his installments of such taxes shall be due and payable as if such taxpayer had not been in default." The clause, "Pay the delinquent installment or installments of such taxes *plus all fees, interest and costs accrued*, and all necessary expenses and reinstate his installment payments and the balance of his installments of such taxes shall be due and payable as if such taxpay-

er had not been in default,'' is a condition to the reinstatement of installment rights. In other words, it is quite plain that to liquidate the right to defer payment of the taxes not already due, had the first installment been paid—that is to say, the right in this case to secure the postponement of the August installment—depends upon his paying the State Tax Collector's commission and the expense incident to the suit.

The statute proceeds upon the idea that the legislature has the power lawfully to postpone the taxes after they become due under the law. I think this is doubtful. Section 100 of the Constitution provides: ''No obligation or liability of any person, association, or corporation held or owned by this state, or levee board, or any county, city or town thereof, shall ever be remitted, released or postponed, or in any way diminished by the legislature, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury.'' The phrase *''released or postponed,''* is of high significance here. The taxes here are levied for the purpose of paying the current expenses of the government generally, and past due indebtedness in other cases, and it was clearly the intention of the framers of the Constitution that after the obligation became due no binding postponement could be made to prevent any agency of the state, acting for it, from proceeding to collect the obligation in any manner authorized by law. In another section of the Code the state is given the right of action, whenever an individual would have a right of action.

By section 3122, Code of 1930, it is provided: ''Taxes a debt recoverable by action.—Every lawful tax assessed, levied or imposed by the state, or by a county, municipality, or levee board, whether ad valorem, privilege, excise, income, or inheritance, is a debt due by the person or corporation owning the property or carrying on the business or profession upon which the tax is levied or imposed, whether properly assessed or not, or by the person liable for the income, inheritance or excise tax, and may be recovered by action; and in all actions for the re-

covery of ad valorem taxes the assessment roll shall only be prima facie correct.''

By section 3120, Code 1930, it is provided that, ''Taxes, both state and county, assessed upon lands or personal property, shall bind the same, and be entitled to preference over all judgments, executions, encumbrances, or liens, whensoever created; and all taxes assessed shall be a lien upon and bind the property assessed, from the first day of January of the year in which the assessment shall be made; and no property shall be exempt from distress and sale for taxes. And it shall not be necessary to the validity of an assessment, or of a sale of land for taxes, that it shall be assessed to its true owner; but the taxes shall be a charge on the land or personal property taxed, and the sale shall be a proceeding against the thing sold, and shall vest title in the purchaser, without regard to who may own the land or other property when assessed or when sold, or whether wrongfully assessed, either to a person, or to the state, or any county, city, town, or village, or subdivision of either.''

Section 3121 provides that all taxable property brought into the state, or acquired or held by any person before the first day of January, shall be assessed, and taxes thereon paid for the ensuing year, etc. These sections fix the lien upon the property of the taxpayer, and provide that suit may be brought, and that no property shall be exempt from distress and sale. It is also provided in section 1775 of the Code, under ''Exempt Property,'' ''Nor shall any property be exempt from sale for nonpayment of taxes or assessments, or for any labor done thereon, or materials furnished therefor or when the judgment is for labor performed or upon a forfeited recognizance or bail bond.''

It is therefore clear that the policy of the state is that the taxes shall be promptly paid when they become due under the statute, and the duty is expressly imposed upon the sheriff to proceed by distress, and sell the same by the 15th of February, if personal property can be found to satisfy the taxes; if not, that the real property

shall be advertised and sold on the first Monday of April. Any sheriff and county tax collector failing to comply with the law forfeits any right he may have to preference in the collection of taxes. The decisions by this Court, heretofore made, that the sheriff has constitutional authority to collect taxes, does not mean that after the period when he shall act has passed, another agency cannot be selected by the legislature to represent the state, county, and other taxing districts of whatever kind. It would seem that at this late date it would not be necessary to cite any authority for the proposition that the state may create officers having powers concurrent with those of constitutional officers, to perform acts which the legislature may authorize. But the power of the State Tax Collector, and that of his predecessor, the State Revenue Agent, to bring suit in cases of default by the proper officers in the collection of taxes, has been upheld in many cases. Chapter 168 of the Code states the law in regard to the State Tax Collector, and section 6986, conferring powers upon that officer, reads as follows: "The state tax collector may appoint a sufficient number of deputies, but not to exceed ten at any one time. He shall have power and it shall be his duty to proceed by suit in the proper court against all persons, corporations, companies and associations of persons for all past due and unpaid taxes of any kind whatever, whether of the state, county, municipality, drainage, levee or other taxing district, or any subdivision thereof, and for all past due obligations and indebtedness of any character due and owing to them or any of them, except penalties for the violation of the anti-trust laws and except income and inheritance taxes. In all cases of valuation or ownership of property which has escaped taxation, he may have subpoenaed witnesses to testify before any board of supervisors, board of mayor and aldermen, or tax commission."

The clause in this statute, "and for all past due obligations and indebtedness of any character due and owing to them or any of them, except penalties for the viola-

tion of the anti-trust laws and except income and inheritance taxes," it will be noted, states specifically "all past due obligations and indebtedness of any character *due and owing* to them or any of them."

To harmonize the powers of the sheriff with those of the State Tax Collector does not extend to restricting the power of the State Tax Collector any further than as to the time within which the sheriff is directed to institute proceedings to collect the taxes. In other words, if no distress proceedings are instituted by the sheriff within the period between the first and 15th of February, and he does not advertise the real estate, and sell it for taxes by the first Monday in April of the year involved, then the State Tax Collector would certainly be entitled to bring suit, because the tax is past due and unpaid, and the rights of the constitutional collector—treating him as a constitutional officer—in the premises ceased, and some other agency of the state, or of the taxing district, may proceed to act.

In fact, the State Tax Collector's office was created, and the right to sue by action for taxes assessed against the owner's property, making it a debt, was given to further the purpose of the state to have the taxes for the proper operation of the machinery of government. The statute creating the State Tax Collector's office also imposes upon him the duty, for which he is not compensated —his compensation being dependent upon his taking some action by which the money is secured. For instance, he is required by section 6987 of the Code to investigate books, accounts and vouchers, and to sue for money due. The duty extends to the investigation of the books, accounts and vouchers of all fiscal officers and depositories of the state, and of every county, municipality and levee board, and taxing district of every kind. He must make the investigation regardless of whether or not any money is collected as a result thereof. He must maintain a force competent to perform these duties, to be paid out of his commissions allowed by law on moneys collected through his activities. In this section 6987 he is expressly author-

ized, "to sue for, collect and pay over all money improperly withheld by such fiscal officer or depository and he has the power to sue and right of action against all such officers and depository and their sureties to collect any such moneys;" but if the delinquency appears by a set of books correctly kept, before bringing suit he must give thirty days' notice, and his right to sue shall not accrue to him in such case until the end of such period.

He is also required to examine the record of all boards empowered to make allowances of public money, under section 6988; and also to have property assessed which has escaped taxation, by proceedings mapped out in section 6991. His power to institute proceedings to back-assess property which has escaped taxation expires at the end of three years from the date on which the right first accrued. He is also required to bid in land sold under judgment or decree in favor of the State Tax Collector, etc., by section 6997.

In Powell v. McKee, Tax Collector, 81 Miss. 229, 32 So. 919, it was held that section 3804, Code of 1892, then in force, authorizing the tax collector to assess such persons and personal property as he may find unassessed by the assessor, was constitutional; which demonstrates the proposition that the State Tax Collector has no exclusive right, after the taxes become due; but that the state may vest the power to collect in any other person or agency which it may see fit to empower to perform that duty.

I think the decision in the prevailing opinion here is contrary to the expressed decisions in Garrett, Tax Collector, v. Robertson, 120 Miss. 731, 83 So. 177; Adams, Revenue Agent, v. Bolivar Co., 75 Miss. 154, 21 So. 608; Miller v. Delta & Pine Land Co., 74 Miss. 110, 20 So. 875; Harrison County v. Robertson, 121 Miss. 387, 83 So. 617; and contrary to the plain statutory purpose of having taxes promptly collected for the proper operation of state, county and municipal governments. The holding in this case is not authorized by anything said or

decided in the controlling opinion in Robertson v. Shelton, 127 Miss. 360, 367, 90 So. 83.

The soundness of the views here contended for is strengthened by the fact that under chapter 126, Code of 1892, section 4191, defining the duties of the State Revenue Agent, it was expressly provided, in regard to his authority to collect taxes, etc., that he should not act until the expiration of the fiscal year in which the same should have been paid. This provision reads, in part, as follows: "And it is his duty to proceed, by suit, in the proper court, against all officers, persons, corporations, companies, and associations of persons, for all past-due and unpaid taxes owing to the state, counties, municipalities, and levee boards, whether ad valorem, privilege, license, poll, or other, and whether assessed, or properly assessed or not, *if the fiscal year in which the same ought to have been paid have expired.*" (Italics supplied).

It was clearly the purpose of the legislature at that time to require the State Tax Collector to wait until the expiration of the fiscal year in which the taxes ought to have been paid.

The chapter on the State Revenue Agent, as contained in the Code of 1892, was amended by chapter 34, Laws of 1894, and section 4191, Code of 1892, was expressly repealed, and section 2 of the act of 1894, proceeds to define his powers and duties, leaving out the clause italicized above, in regard to the expiration of the fiscal year, making it read: "He shall have a right of action and may sue at law or in equity in all cases where the State or any county, municipality or levee board has the right of action or may sue. It is the duty of the State Revenue Agent to investigate the books, accounts and vouchers of all fiscal officers of the State, and of every county, municipality and levee board, and to sue for, collect and pay over all money improperly withheld from either." So the legislature deliberately left out of the amended act the clause, "if the fiscal year in which the same ought to have been paid have expired," giving the right by the amendment, which is contingent on this

amendment of 1894, to sue at once when the taxes become due.

In practical effect, the prevailing opinion restores the omitted clause, and declares it to be the law which the legislature expressly repealed, and has never re-enacted. In my personal opinion, the omitted clause should have been retained; but that is not a legal or judicial opinion, and I cannot consent to substitute the Court's judgment for that of the legislature, and construe the law to mean what the legislature, in its legitimate action, has eliminated from prior statutes, clearly indicating its purpose and wish that the State Tax Collector should sue after the debt has become due, to the end that the taxes must be in the proper treasury, to serve the purposes for which they were levied and collected from the taxpayers. Consequently, I think the judgment should be reversed, and judgment rendered here in favor of the State Tax Collector.

**McGowen, J.**, concurs in this opinion.

**Smith, C. J.**, delivered a dissenting opinion.

I am unable to concur in the majority opinion and its conclusions, but am inclined, with some hesitation, to concur, not in all that is said in Judge ETHRIDGE's opinion, but in his conclusion that the appellant should have been allowed the fees here claimed by him. This whole difficulty could be easily removed by a statute definitely fixing the date on which the state tax collector may sue for delinquent ad valorem taxes, which I hope the legislature will see fit to enact.

**McGehee, J.**, delivered opinion on suggestion of error.

After due consideration of the suggestion of error in this cause, we are of the opinion that the same should be overruled for the reasons stated in the concurring opinion of Justice GRIFFITH rendered in connection herewith.

We do not feel that we can add anything to the strength of the argument made by him therein as to why the former opinion should be adhered to.

Suggestion of error overruled.

**Smith, C. J.,** and **McGowen** and **Ethridge, JJ.,** adhere to their former opinion in the case.

**Griffith, J.,** delivered opinion on suggestion of error.

The argument pursued in the suggestion of error, when analyzed to the end to which it would lead, is to the effect that the State Tax Collector has the right to sue at any time after the taxes become due, that is, at any time after February 1st. This contention was so thoroughly discussed in conference and was so definitely rejected by the majority of the Court that further reference to it need not be made.

The suggestion of error relies on two previous cases: Delta & Pine Land Co. v. Adams, 93 Miss. 340, 48 So. 190, and Nickey v. State, 167 Miss. 650, 145 So. 630, 146 So. 859, 147 So. 324. In the Delta Land case, there was involved a back-tax assessment for a number of past years, and it was expressly averred that the taxes could not be collected by distraint or the other ordinary processes for such collection—could not be collected under the usual and normal plan or scheme provided by the general statutes. In the Nickey case, the sheriff advertised the lands for sale, but before sale he decided that the sale would be ineffective and he himself, the sheriff, applied to the Attorney-General to bring the suit, which was done in July, following the advertised tax sale in April.

In the Nickey case on page 672 of 167 Miss., 145 So. on page 633, the Court took particular caution to guard the opinion therein from the construction of it, which appellant urges upon us in his suggestion of error. There the Court said: "We have not a case here where the state has interfered with the collection of these taxes by tax collector through the statutory scheme. It was

agreed in the record that the tax collector abandoned the statutory scheme, and agreed for the state to bring this suit. The suit is the result of co-operation between the Attorney General and the tax collector. It was thought by them that the taxes might be collected by this suit, but probably could not be by the tax collector. This is not a case where the state has pushed the tax collector out of the way, and taken charge of the situation. It is therefore unnecessary to decide in this case how far the state can go in interfering with the tax collectors in the performance of their statutory duty in the collection of taxes.''

The opinion in the present case, now challenged, had such cases as the Delta Land case and the Nickey case, and others heretofore decided, and still others which under exceptional facts may arise in the future, in mind in the concluding paragraph, page 797 of 185 So. No. 5, which concluding paragraph is as follows: ''It is to be noted that we are not here dealing with a case where the taxpayer has denied all liability, as, for instance, where he claims an exemption, or that the assessment is void, or that for any alleged reason the warrant of the assessment is invalid, or the like. Cases of 'that kind will be dealt with as they arise.''

Much water has passed under the mill since the decisions in cases rendered previously to the present case. The unfortunate experiences of the days that fell upon the people beginning in 1930 have shown the way towards an amelioration of the powers of the tax gatherer to pounce upon the taxpayer on the tick of the clock. These experiences caused the Legislature in 1932 to adopt the installment plan of tax payments, something theretofore unknown to the laws of this state; and it seems now fairly certain that this more liberal plan will remain as a permanent feature of our tax-collecting system. Laws 1932, Ex. Sess., c. 383, sec. 1; Laws 1934, c. 188, secs. 1, 5, 7-9.

Under that plan the taxpayer may pay one half on or before February 1; one quarter on or before May 1,

and the last quarter on or before August 1; and if the taxpayer has failed of payment of one or both his first two installments he may reinstate himself as an installment payer by paying previous installments plus "all fees, interest and costs accrued." The interest rate provided for the exercise of that privilege is one half of one per cent per month or six per cent per annum, which is as high a rate as the state or any of its subdivisions have ever paid for money borrowed.

But the contention of appellant, if sustained, would take the heart out of the installment system. Under his contention, as soon as the taxpayer becomes delinquent of his first installment, the state tax collector could at once institute suit, and thereupon his fees of twenty per cent would, according to his contention, at once accrue to him, and which would have to be paid either by the county or by the taxpayer. This, if the county has to pay it, would cost the county twenty per cent, when, as already said, no county has ever had to pay more than six per cent for money. To get around this result, which manifestly no legislature would ever have authorized by express words of legislation as applicable to the installment period of six months, it is said that the taxpayer must pay this twenty per cent as a part of "all the fees, interest and costs accrued." Such a requirement, with all deference to those who contend for it, would render the installment plan of payment the most grotesque mockery that was ever perpetrated.

Here is a plan to aid the people in the payment of their taxes in installments at 6 per cent interest, and to extend that aid throughout the whole period of six months, and nonetheless to those who unfortunately were not able to meet the first or second installments upon exact time; and then here comes the State Tax Collector who says to those last mentioned "You will pay me an additional 20 per cent if you want to avail of the so-called installment plan." Could anything have been further from the contemplation of the Legislature? What more could the court do to despoil the latest legislative act of

its spirit and substance than to adopt the contentions here made in behalf of appellant? What good is an installment plan for six months, which, as to the more unfortunate of its intended beneficiaries, would require a twenty per cent premium to make it available? To allow the contentions of appellant to prevail would be to put it in his power to work, in a large measure, a repeal, in practical aspects, of the installment legislation, and certainly so as to all the particular taxpayers whom he should select to feel the force of his bludgeon. In what has above been said we speak of the office of State Tax Collector and its powers, and of what can and cannot be done under those powers, and, of course, is wholly without reference to who now is or may hereafter be the occupant of that office.

The suggestion of error is therefore properly overruled.