# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-IA-00962-SCT

*BOARD OF TRUSTEES OF STATE INSTITUTIONS OF HIGHER LEARNING; RICKI R. GARRETT; CARL NICHOLSON, JR.; NAN McGAHEY BAKER; THOMAS W. COLBERT; WILLIAM S. CRAWFORD; LARRY E. HOMAN; J. MARLIN IVEY; JAMES ROY KLUMB; JAMES W. LUVENE; D.E. MAGEE, JR.; VIRGINIA SHANTEAU NEWTON; CASSIE PENNINGTON; THOMAS LAYZELL; UNIVERSITY OF SOUTHERN MISSISSIPPI; HORACE FLEMING; AND JAMES O. WILLIAMS*

*v.*

*OLON E. RAY; TED J. ALEXANDER; JIMMY C. HOPPER; MISSISSIPPI ASSOCIATION OF COMMUNITY AND JUNIOR COLLEGES INTER-ALUMNI ASSOCIATION; BENNIE STONE GOODEN; ROBERT LAMAR GOZA; H. KIRK MOORE, JR.; BEVERLY C. SMITH; K. KEENAN BENEFIELD; CORNELIUS B. CARTER; MEREDITH HARPER; ARVELLE S. HODGE; SHUNYA D. HUNT; MARTHA H. McILWAIN; JASON REESE; JEFF ROBERTSON; LAURA K. PETERSON; TALMADGE PORTIS, JR.; BOBBY F. THRASH; MISSISSIPPI FACULTY ASSOCIATION FOR COMMUNITY AND JUNIOR COLLEGES; MAGDALENE ABRAHAM; KENNETH R. BISHOP; JANICE E. DUNCAN; SANDRA H. GRISHAM; TOM SHEPHERD, JR.; EDDIE C. SMITH; JAMES R. SMITH; KENNETH J. TAYLOR; WALTON B. WILSON; WILLIAM M. BREWER; CURTIS L. DAVIS; MARSHALL THOMAS HEWLETT; LINDA WEEKS HILL; WILLIAM H. SNELL, JR.; L. D. STRINGFELLOW; W.L. VIERLING; MISSISSIPPI STATE BOARD FOR COMMUNITY AND JUNIOR COLLEGES; MISSISSIPPI ASSOCIATION OF COMMUNITY AND JUNIOR COLLEGES*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/30/2000 |
| TRIAL JUDGE: | HON. WILLIAM HALE SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | REUBEN V. ANDERSON |
| | JAMES W. CRAIG |
| | VINCENT J. BODIN |
| ATTORNEYS FOR APPELLEES: | JAMES LAWTON ROBERTSON |
| | PAUL E. BARNES |
| NATURE OF THE CASE: | OTHER |
| DISPOSITION: | REVERSED AND RENDERED-02/28/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/21/2002 |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Appellees filed this suit on December 22, 1999, in the Chancery Court of the First Judicial District of Hinds County. Appellees claim that the Board of Trustees of State Institutions of Higher Learning (IHL) violated Mississippi law in allowing the University of Southern Mississippi-Gulf Park (USM-GP) to begin offering freshman and sophomore courses as part of its curriculum. On January 19, 2000, they filed a Motion for Preliminary injunction to enjoin Appellants from commencing the offering of lower level courses at the USM-GP campus. Appellants moved to dismiss the complaint under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure. Following a hearing on the motions submitted, the trial court denied the motion to dismiss and granted the preliminary injunction. Appellants, unopposed by Appellees, immediately applied for an interlocutory appeal. On May 30, 2000, the Chancery Court certified the case for interlocutory appeal, which this Court accepted.

¶2. We hold that Miss. Code Ann. § 7-5-1 (1991) requires consent of the Attorney General prior to filing a suit between state agencies. Appellees did not obtain this consent, thus the suit is barred. We also hold that our statutes do not designate a specific location for USM's campus. Thus, IHL created a dual campus rather than an off-campus location when it approved the Gulf Coast location. State law is not violated. Finally, and more importantly, we hold that the State Board for Community and Junior Colleges (SBCJC) cannot be established as a body with veto power per statute over IHL's constitutionally mandated power to manage and control the state's universities. We also find that the Mississippi State Board for Community and Junior College plaintiffs do not have standing, thus, their federal civil rights claims are moot. We reverse and render the trial court's judgment with prejudice.

## FACTS

¶3. The IHL was created to oversee Mississippi's state colleges and universities. The Mississippi State Board for Community and Junior Colleges (SBCJC) performs the same function for the state's junior colleges. Miss. Code Ann. § 37-102-3 (2001) provides that the IHL "shall not permit its universities to offer courses for college credit at the lower undergraduate level at an off-campus site unless approved by the [SBCJC]. . . ."

¶4. The USM-GP and the Mississippi Gulf Coast Community College (MGCCC) operated in conjunction on the Gulf Coast. The MGCCC offered freshman and sophomore courses and the USM-GP offered junior and senior courses. Beginning in the early 1990's, there was a push to have a four-year university on the Coast. This culminated in 1998 in a request by Representative Diane Peranich of Harrison County for an opinion from Attorney General Mike Moore regarding whether IHL could authorize the University of Southern Mississippi (USM) to establish a full four-year university there. The Attorney General responded that USM had no statutorily designated campus, and the IHL should be able to establish any location as a campus for USM. Thus, such a decision would not be subject to the mandate of § 37-102-3.

¶5. SBCJC asked the Attorney General about filing suit against IHL over this action (there is some debate over this between the parties-but there was clearly correspondence between the SBCJC and the Attorney General), and permission was never given to file suit; although, permission was given to hire an attorney to look into the legality of IHL's actions in relation to the SBCJC. After repeated communications, the Attorney General instructed the SBCJC to meet with IHL members and those involved with the USM-GP project to see if an amicable solution could be reached. Shortly after this request, the SBCJC again requested permission to file suit, rather than attempting any type of meeting as it had been instructed. Within

a week following this letter, and prior to any sort of response from the Attorney General, the SBCJC, along with several individuals and unincorporated organizations, filed suit against the IHL. SBCJC was granted a preliminary injunction to halt USM-GP from offering lower level undergraduate courses. IHL filed a Motion to Dismiss, and the trial judge denied it. The judge then certified an interlocutory appeal, which this Court, in turn, granted. *See* M.R.A.P. 5.

## STANDARD OF REVIEW

¶6. A motion to dismiss under Miss.R.Civ.P. 12(b)(6) raises an issue of law. *Arnona v. Smith*, 749 So. 2d 63, 65 (Miss. 1999) (citing *Tucker v. Hinds County*, 558 So.2d 869 (Miss.1990); *Lester Eng'g Co. v. Richland Water & Sewer Dist.*, 504 So.2d 1185, 1187 (Miss.1987)). This Court conducts de novo review on questions of law. *Id*. (citing *UHS-Qualicare, Inc. v. Gulf Coast Comity. Hosp., Inc.*, 525 So.2d 746, 754 (Miss.1987)). "When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Id*. (citing *Overstreet v. Merlos*, 570 So.2d 1196 (Miss.1990); *DeFoe v. Great S. Nat'l Bank*, 547 So.2d 786 (Miss.1989); *Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*, 521 So.2d 857 (Miss.1988); *T.M. v. Noblitt*, 650 So.2d 1340, 1342, (Miss.1995)). Further, this Court has stated that "in order to survive a Rule 12(b)(6) motion, the complaint need only state a set of facts that will allow the plaintiff 'some relief in court.'" *State v. Dampeer*, 744 So. 2d 754, 756 (Miss. 1999) (quoting *Weeks v. Thomas*, 662 So. 2d 581, 583 (Miss. 1995)).

## DISCUSSION

¶7. There are essentially three issues involved in this appeal. First, whether § 7-5-1, which requires consent of the Attorney General prior to a suit between state agencies, acts as a bar to this suit. Second, whether the IHL and USM may offer first and second year courses on the Coast without the approval of the SBCJC. Third, whether IHL's actions violate federal civil rights laws.

### (1) WHETHER § 7-5-1, WHICH REQUIRES THE ATTORNEY GENERAL'S CONSENT PRIOR TO COMMENCEMENT OF A SUIT BETWEEN STATE AGENCIES, ACTS AS A PROCEDURAL BAR IN THE CASE BELOW?

¶8. Miss. Code Ann. § 7-5-1 (1991) states:

> No arm or agency of the state government shall bring or defend a suit against another such arm or agency without prior written approval of the Attorney General. He shall have the powers of the Attorney General at common law and is given the sole power to bring or defend a lawsuit on behalf of a state agency, the subject matter of which is of statewide interest, and he shall intervene and argue the constitutionality of any statute when notified of a challenge thereto, pursuant to the Mississippi Rules of Civil Procedure.

IHL argues that this is a suit between SBCJC and IHL, two state agencies, and thus requires the consent of the Attorney General. Since that consent was never given, IHL contends that this suit should be dismissed.

¶9. The Appellees argue that the SBCJC is a party joined under Rule 19(a), Miss. R. Civ. P., and that the other Appellees, who are the "real Plaintiffs" and do not have to gain consent to file suit, have standing on their own. IHL argues in response to this that the remaining parties do not have standing because they have

no colorable interest in the suit. The Appellees also argue that the Attorney General is the only appropriate person to exercise the "veto" power under § 7-5-1. The Appellees further note that the Attorney General virtually ignored SBCJC's requests for consent to file suit, and had thus inappropriately chosen sides. They contend that he should be estopped from objecting to SBCJC's participation in this suit based on his inaction prior to the suit.

¶10. The remaining Appellees are individuals and private organizations. The individuals are current students, alumni, administrators and faculty of junior colleges across the State; Gulf Coast taxpayers; African Americans who reside in the State; and three unincorporated associations which are composed of alumni, faculty and supporters of junior colleges in the State. These Appellees contend that they will suffer unique harm if the USM-GP is allowed to offer a full four-year curriculum.

¶11. Those directly involved with the junior colleges (students, alumni, administrators, faculty and organizations) argue that they have a property right "in the educational investment of time, money and effort and other resources that he or she has made and a liberty interest in the continued enjoyment of all of the rights, privileges and immunities appertaining thereto." The Gulf Coast taxpayers believe "that the investment he or she [has made...] is being compromised and damaged by the actions of the IHL Board." As for the African American Appellees, they contend that the African American community is particularly benefitted by the junior college system in place in Mississippi. Due to this, they argue that the harm suffered by the junior college system because of the actions of the IHL Board will have a distinct negative impact on them.

¶12. This Court has previously stated the generally settled rules in regard to standing:

> Parties may sue or intervene when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, [citations omitted], or as otherwise authorized by law. [citations omitted]. *Harrison County v. City of Gulfport*, 557 So. 2d 780, 782 (Miss. 1990). Standing is like any other charge of a party's pleading. It is subject to the rule...that we take as true the allegations on the face of the complaint.

*State ex rel. Moore v. Molpus* 578 So. 2d 624, 632 (Miss. 1991). In *Van Slyke v. Board of Trustees of Institutions of Higher Learning* this Court found that the Plaintiff had standing to challenge the composition of the IHL Board, and noted that the Supreme Court has "been more permissive in granting standing to parties who seek review of governmental actions." *Van Slyke v. Board of Trustees of Institutions of Higher Learning*, 613 So. 2d 872, 875 (Miss. 1993) (citing *Board of Trustees v. Van Slyke*, 510 So. 2d 490, 496 (Miss. 1987) (Prather, J. dissenting)). The Court further stated that:

> The argument persists that citizens should have the authority to challenge the constitutionality and/or review of governmental action, and if individuals do not have such authority, how else may constitutional conflicts be raised. This is particularly true when a public official charged with such a duty fails to act. Constitutional litigation by private citizens may be maintained in cases where there is no probability of the statute being challenged by one of the class discriminated against; or, when a decision on validity would not be necessary, one not within the class may question the validity of the statue. *Miller v. Lamar Life Insurance Co.*, 158 Miss. 753, 131 So. 282 (Miss. 1930).

*Id*. (citing *Board of Trustees v. Van Slyke*, 510 So. 2d at 497 (Prather, J. dissenting)).

¶13. Here, a public official has not refused to act; in fact, in this particular case there has been much activity

on the part of those political bodies involved. This certainly lessens support for allowing action by uninvolved citizens. Even considering the more liberal stance taken towards finding standing for those challenging governmental actions, we find that the plaintiffs below do not assert a colorable interest in the subject matter of this suit.

¶14. IHL argues that the SBCJC is procedurally barred from proceeding with this action, as § 7-5-1 prohibits a state agency from bringing suit against another state agency without the permission of the Attorney General. Appellees contend that § 7-5-1 is unenforceable in this instance since the SBCJC was joined as an indispensable party. The Appellees argue in the alternative that § 7-5-1 should not apply to bar this suit even if the SBCJC is found to be a regular Plaintiff, and not a Rule 19 Plaintiff.

¶15. The SBCJC cites *Frazier v. State*, 504 So. 2d 675 (Miss. 1987), as supporting its contention that § 7-5-1 should not act as a procedural bar to the present suit. In *Frazier*, a group of defendants were appealing from declaratory judgments that they had violated constitutional provisions against public officers having an interest in a contract while serving in a public capacity that aided in the formation of the contract. *Id*. The Ethics Commission (the "Commission") investigated several public officials and reported them to the Attorney General's office. *Id*. The Attorney General filed a civil suit against some of the defendants. Following this, the Commission brought suit against the remaining defendants. One of the issues on appeal was whether the Commission had authority to bring such a suit, or whether it was barred due to the authority given to the Attorney General to bring such suits. This Court found that the Commission was not barred from instituting such a suit under the particular circumstances of that case.

¶16. The case sub judice is easily distinguished from *Frazier*. In the present case the SBCJC had been advised by the Attorney General to meet with members of the IHL board and USM to discuss possible ways to settle the matter. The Attorney General advised the SBCJC that if they were then unable to come up with a workable compromise that he would then consider allowing a law suit to proceed. In *Frazier*, the Attorney General had already filed suit against some of the defendants, and thus it was clear he did not intend to pursue the remaining defendants that had been suggested by the Commission. Further, this Court stated in *Frazier* that:

> If this suit was necessary in order for the members of the Commission to properly fulfill the functions and responsibilities with which they were charged [by statute], then they were manifestly entitled to have some attorney represent the Commission in pursuing the matter in court.

504 So. 2d 675, 691 (Miss. 1987). In the case at bar, it was not necessary for the SBCJC to file suit in order to fulfill the duties imposed on it by statute. As stated, the Attorney General had not absolutely denied their request to file suit; he simply called for a stay of any such proceedings until the two sides met and attempted to come up with a solution agreeable to all.

¶17. *Frazier* is also distinguished by the statutory purpose and authority afforded the Ethics Commission versus that of the SBCJC. Miss. Code Ann. § 25-4-19 (1999) provides a listing of the statutory powers granted to the Ethics Commission.[1] This Code Section expressly authorizes the Commission to pursue legal remedies when it believes such action is called for. Miss. Code Ann. § 37-102-3 (2001) provides that the IHL shall get approval from the SBCJC prior to authorizing university freshman and sophomore classes at an off-campus location. Miss. Code Ann. § 37-4-3 (2001) delineates the authority and powers granted to the SBCJC.[2] This section gives no authority for the SBCJC to pursue judicial relief.

¶18. The Attorney General is the chief legal officer and advisor for the State and is charged with handling all litigation on its behalf, including where one state agency sues another. Miss. Code Ann. § 7-5-1. The Attorney General's written approval must be obtained before one agency sues another. *Id.* In the case before us now, the Attorney General neither refused to sue on the SBCJC's behalf nor gave written permission for the SBCJC to pursue its claims in court. Commendably, the Attorney General attempted to seat the parties at the negotiation table where an amicable agreement could be reached. Before this could happen, the SBCJC filed suit. By taking such action before the time was ripe, the SBCJC demonstrated an unwillingness to work with the Attorney General to avoid litigation between two state agencies. Since the SBCJC acted without requisite approval from the Attorney General when no failure to proceed on his part can be demonstrated, ***Frazier*** cannot serve as grounds to support its actions.

¶19. The SBCJC has organized a large group of citizens to file suit in what amounts to a blatant attempt at subterfuge to get around the dictates of § 7-5-1. To allow this case to proceed would be to allow the SBCJC to make an end run around the law, and this we will not allow. We find that the Appellees are barred from proceeding with this action under § 7-5-1.

### (2) WHETHER THE IHL AND USM MAY OFFER FIRST AND SECOND YEAR COURSES ON THE COAST WITHOUT THE APPROVAL OF THE SBCJC?

¶20. IHL further argues that its actions do not violate any Mississippi law. Mississippi Code Ann. § 37-102-3 states:

> **The Board of Trustees of State Institutions of Higher Learning shall not permit its universities to offer courses for college credit at the lower undergraduate level at an off-campus site unless approved by the State Board for Community and Junior Colleges**. The Board of Trustees of State Institutions of Higher Learning, in cooperation with the State Board for Community and Junior Colleges, shall study the need and advisability of offering (a) courses for college credit at the lower undergraduate level, and (b) advanced centers for technology partnerships for industrial training and professional development for credit and noncredit courses, at the following off-campus sites by four-year public state institutions of higher learning:
>
> the Mississippi Gulf Coast counties; Greenville, Mississippi; Columbus, Mississippi; McComb, Mississippi; Hattiesburg, Mississippi; Meridian, Mississippi; Laurel, Mississippi; and any other proposed area of the state. Any such study shall take into account the ongoing programs of the community and junior colleges in the State of Mississippi when said board authorizes off-campus programs created under this chapter. It is the intent of the Legislature to meet the educational needs of students who do not have ready access to the educational opportunities that they desire. It is the further intent of this chapter that university off-campus programs established hereunder will in no way usurp the responsibilities of the public junior colleges of the State of Mississippi. The board shall establish such rules and regulations as it deems necessary and proper to carry out the purposes and intent of this chapter.

¶21. IHL notes the mandate of § 37-102-3, but also points out Article 8, § 213-A of the Mississippi Constitution, which empowers IHL with the management and control of Mississippi's eight universities. It argues that these two provisions must be read so the statute does not conflict with the constitutional provision, or in the alternative that the statute is unconstitutional.

¶22. As stated, Article 8, § 213-A of the Mississippi Constitution gives the management and control of this State's eight universities to the IHL.[3] Mississippi Code Annotated § 37-102-3 sets up the SBCJC as an authorizing body over the IHL whenever the IHL may decide to set up off-campus programs offering freshman and sophomore courses. The question we consider today is whether the actions of the IHL in planning to offer such courses at USM-GP are in violation of the law. This question turns on the reading of these two provisions.

¶23. The general principle followed when considering a possible conflict between the constitution and a statute is that the constitutional provision prevails. *See Saxon v. Harvey*, 223 So. 2d 620, 624 (Miss. 1969) ("The wisdom of the drafters of our Constitution is not subject to question by this Court, and is to be modified or altered by amendment only.") It must be noted that the constitutional provision prevails if there is an irreconcilable conflict, otherwise a certain deference is afforded statutes. *Attorney General v. Interest of B.C.M.*, 744 So.2d 299, 301 (Miss. 1999). We can not assume that the Legislature intended to violate the Constitution by passing § 37-102-3. "On the contrary, the presumption is that that body intended to comply with the organic law, and the statute should be given a reasonable interpretation which is consistent with that presumed intent and which would permit the upholding of the act.' *Berry v. Southern Pine Elec. Power Ass'n*, 76 So.2d 212, 267 (Miss. 1954) (quoting *Willmut Gas & Oil Co. v. Covington County*, 71 So.2d 184, 189 (1954)). "'When one construction of a statute would endanger its constitutionality, it will be construed in harmony with the Constitution if, under the language of the statute, this may reasonably be done.'" *Jackson v. State*, 337 So.2d 1242, 1251 (Miss. 1976)(verdict form discussed within superseded by statute) (quoting *State v. County Sch. Bd.*, 181 Miss. 818, 181 So. 313 (1938)). As this Court recently summarized:

> Deference must be given to statutes and the presumption of constitutionality that must accompany them. *See State v. Jones*, 726 So.2d 572, 573 (Miss.1998). To be successfully challenged, the legislation must be shown to be in "palpable conflict with some plain provision of the constitution." *State v. Mississippi Ass'n of Supervisors, Inc.*, 699 So.2d at 1223 (citing *In the Interest of T.L.C.*, 566 So.2d 691, 696 (Miss.1990)). Any legitimate interpretation that creates a reasonable doubt of unconstitutionality may prevent the court from striking the statute. *See id.* (quoting *Wells v. Panola County Bd. of Educ.*, 645 So.2d 883, 888 (Miss.1994)).

*Interest of B.C.M.*, 744 So.2d at 301. It is under this deferential standard that we examine § 37-102-3.

¶24. The situation created by § 37-102-3 is to set up the SBCJC as the decision maker when it comes to determining what courses the IHL may select as part of a university off-campus location's curriculum. In *Gully v. Lincoln County*,184 Miss. 784, 185 So. 795 (1939), this Court considered a trial court's dismissal of a state tax collector's action to collect commissions. While not particularly on point with this situation, the Court did review a point that is applicable to the case at bar. This discussion considered whether the state tax collector could collect such commission when the sheriff, the county tax collector, had collected the taxes. The Court initially stated that prior decisions had found an "implied requirement in Section 135, Constitution 1890, that ad valorem state and county taxes shall be collected by the sheriff." *Id*. at 796. The Court reasoned that "[s]ince this primary duty is one implied in the Constitution itself, no statute can make it a primary duty of some other officer." *Id*. The Court further stated:

> For if any such intervention were previously allowed, the duty of the sheriff as a primary constitutional duty would be subverted into one which is inferior or subordinate to that of the intervening statutory

officer. It would be, indeed, to permit a statutory officer to exercise a superior authority of censorship over a constitutional officer in respect to the constitutional duties of the latter, and in a measure to displace him if, in the judgment of the statutory officer, the constitutional officer was not proceeding with the discharge of his duties as diligently as the statutory officer deemed proper or requisite.

*Id*.

¶25. The same situation exists in the case at bar. Section 37-102-3, in effect, gives a statutorily created entity, the SBCJC, dominion over a constitutionally created body, the IHL. While we recognize that the legislature possesses the power to take away by statute what has been given by statute, the same can not be said for that created by the Constitution. To allow this would be an affront to our Constitution.

¶26. Section 37-102-3, as it reads, infringes on the constitutionally vested managerial powers of the Board of Trustees and is therefore unconstitutional. It effectively places the Board of Trustees in a subordinate position to the SBCJC in the management and control of the universities under its care. According to the statute, the SBCJC, and not the Board of Trustees, ultimately determines if a state college or university can offer lower level undergraduate courses at an off-campus site. Thus, statute removes a constitutionally authorized managerial power belonging to the Board of Trustees and gives it to the SBCJC. The resulting conflict between the powers of the Board of Trustees and the SBCJC is irreconcilable. As a result, the statute cannot withstand constitutional scrutiny.

¶27. The SBCJC cannot be set up as a body with veto power over the IHL's constitutionally-mandated power to manage and control the State's universities. As this is the effect of § 37-102-3, we find it to be unconstitutional under Article 8, § 213-A of the Mississippi Constitution.

### (3) WHETHER IHL'S DESIGNATION OF USM-GP AS A DUAL CAMPUS VIOLATES FEDERAL CIVIL RIGHTS LAWS?

¶28. Finally, IHL argues that its actions do not violate federal civil rights laws. As we found under Issue One that the non-SBCJC plaintiffs did not have standing to pursue a claim against the IHL, this issue is moot.

### CONCLUSION

¶29. First, § 7-5-1, which requires consent of the Attorney General prior to a suit between state agencies, acts as a bar to this suit. Second, we find § 37-102-3 to be unconstitutional. Third, as the non-SBCJC plaintiffs do not have standing to pursue a claim, their federal civil rights claims are moot. Thus, we reverse the trial court's preliminary injunction and its denial of IHL's motion to dismiss, and we render a judgment in favor of IHL dismissing the complaint and this action with prejudice.

¶30. **REVERSED AND RENDERED**.

**PITTMAN, C.J., WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR. DIAZ, J., CONCURS IN PART. McRAE, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

**McRAE, PRESIDING JUSTICE, CONCURRING:**

¶31. I concur in reversing the trial court's denial of dismissal and rendering a judgment for the Board of Trustees of State Institutions of Higher Learning. The Board of Trustees of State Institutions of Higher Learning determines what constitutes a university's campus and who has total control over a campus. It defies logic that a four-year college or university is not located on the Gulf-Coast where a large portion of Mississippi's citizens live. To have one on the Coast would allow the community colleges to feed their students into it. In the years since the University of Southern Mississippi came into existence, it has been determined that the university is composed of campuses in various parts of the state. Each campus is not a separate entity unto itself. The Board of Trustees of State Institutions of Higher Learning has management rights over the state's eight universities. However, Miss. Code Ann. § 37-102-3, as it reads, gives SBCJC power over the Board of Trustees of State Institutions of Higher Learning in determining whether a university may offer lower under-graduate level classes at a secondary campus. Therefore, this statute is diametrically in conflict with Article 8, § 213-A of the Mississippi Constitution, and I agree that it is unconstitutional in so far as it attempts to grant SBCJC the authority of the Board of Trustees of State Institutions of Higher Learning. The Board of Trustees of State Institutions of Higher Learning, not having defined the University of Southern Mississippi's boundaries, is constitutionally free to put campuses wherever it chooses and to offer whatever classes it desires on any campus. Thus, if the Board desires a four-year curriculum on the Gulf Coast campus, it is free to institute one.

¶32. I disagree with my colleagues in saying that § 7-5-1 precludes SBCJC from bringing a lawsuit, and I believe that the majority makes a wrong turn in construing the statute as giving the Attorney General the exclusive power to determine whether they are entitled to bring a lawsuit. Our courts are open to all entities and persons. *See* Miss. Const. art. 3,§ 24. The majority misreads *Frazier v. State,* 504 So.2d 675 (Miss. 1987), and its progeny which construe the statute to say that while the Attorney General can refuse to allow a public entity the right to file a lawsuit, if the matter is of great concern to the state government, then the agency is entitled to have a court determine whether it should have its day in court. If the Attorney General will not represent it in the lawsuit, it should be allowed to retain outside counsel with the court's consent. *Frazier,* 504 So.2d at 691. Not only is this stated in *Frazier*, this interpretation can be found in pre and post *Frazier* cases as well. See *Dye v. State ex rel. Hale,* 507 So.2d 332 (Miss. 1987); *Grenada Mun. Separate Sch. Dist. v. Jesco, Inc.,* 449 So.2d 226 (Miss. 1984); *Alexander v. State ex rel. Allain,* 441 So.2d 1329 (Miss. 1983). The question for the Court to determine is whether § 7-5-1 precludes one governmental entity from suing another governmental entity. This case should be subject to court review, instead of the sole scrutiny of the Attorney General. In the instant case, SBCJC was within its rights to bring suit, even without the Attorney General's authorization. Therefore, in a case such as this, when a dispute arises between the Attorney General and an entity, the court may resolve it. It is for the court to make the determination as to whether SBCJC was properly before it and whether its case should proceed to trial.

¶33. I further part ways with the majority by saying that although SBCJC's extensive list of individuals participating in the suit amounts to a blatant attempt to circumvent the dictates of § 7-5-1, this is not the issue before us. The issue is whether private citizens can take part in a lawsuit and proceed to question the constitutionality and functions of a public entity. We have been very liberal in this regard and we should continue to do so. Private citizens should not be precluded from asking questions when they feel some law is unconstitutional or some public entity is violating the law. *See Smith v. Dorsey*, 599 So.2d 529 (Miss. 1992)*; Canton Farm Equip., Inc. v. Richardson,* 501 So.2d 1098, 1106-1107 (Miss.1987). It was observed in *Van Slyke I* that: Citizens should have the authority to challenge the constitutionality of and/or review a governmental action. If individuals do not have such authority, how else may constitutional conflicts

be raised? An individual's motive matters not in determining whether they are allowed to question a public entity's action. The Mississippi Constitution contains no language restricting review to actual cases and controversies. Therefore, we, as a court, are able to grant standing to parties who seek review of governmental actions. *Van Slyke I,* 510 So.2d at 496. *See also **Dye v. State ex rel. Hale,*** 507 So.2d 332, 338 (Miss.1987) (State Senators had standing to sue Lieutenant Governor on charges that their legislative power had been impinged by his actions; Attorney General did not have exclusive power to bring suit); *Canton Farm Equip., Inc. v. Richardson,* 501 So.2d 1098, 1106-1107 (Miss.1987) (unsuccessful bidder for contract with County Board of Supervisors granted taxpayer standing to sue supervisor who did not comply with statutes in awarding bids, even though the public was not expressly invited to join the suit).

¶34. In conclusion, I wholeheartedly agree that the Board of Trustees of State Institutions of Higher Learning has the power to authorize dual campuses for its universities as it is not a constitutional violation for the University of Southern Mississippi's Gulf Coast campus to offer four-year courses. The Board of Trustees of State Institutions of Higher Learning did not violate any Mississippi law by allowing four-year courses at the University of Southern Mississippi's Gulf Coast campus, as "campus" has not been defined to exclude those portions of a university that are not in the same geographic area. The majority reached the "right result," but the way it has gone about it may allow room for another suit to be filed on the merits. For the foregoing reasons, I disagree with the rationale of the majority in its decision, but concur in its result concerning the Board of Trustees of State Institutions of Higher Learning in allowing four-year courses at the University of Southern Mississippi's Gulf Coast campus. To allow out-of-state colleges (Tulane University for one) to fill a void and not have a four-year state institution of our own is ludicrous.

**DIAZ, J., JOINS THIS OPINION.**

1. The commission shall have the authority to do the following:

> (a) Make investigations, as provided in Section 25-4-21, with respect to statements of economic interest filed pursuant to this chapter and with respect to alleged failures to file any statement of economic interest as required pursuant to this chapter;
> (b) Request the assistance of the Attorney General, the Performance Evaluation and Expenditure Review Committee, the Department of Audit and any other governmental agency or political subdivision in the conduct of any investigation in which a particular resource of an agency may be needed;
> (c) Administer oaths and issue and serve subpoenas upon any witness or for the production of documents before the commission, and such subpoenas may include a protective order requiring confidentiality of the subpoena, the subject matter, and any documents subpoenaed, and such subpoenas shall be enforced by the courts of this state;
> (d) Report, as provided in Section 25-4-21(e), to the Attorney General and appropriate district attorney;
> (e) Upon a complaint signed under oath by any person, including any member of the commission or its staff, investigate, as provided in Section 25-4-21, any alleged violation of law by public officials or public employees;
> (f) Seek, in the name of and for the use and benefit of the State of Mississippi, or a political subdivision thereof, restitution or other equitable or legal remedies in civil law to recover public funds or property

unlawfully taken, as well as any unjust enrichment, although not public funds, and to recover on bonds where the state or a political subdivision thereof is the beneficiary;

(g) Employ an attorney or attorneys to:

(i) Serve as a special prosecutor to assist the Attorney General or a district attorney; and

(ii) File actions to seek restitution or other remedies to recover funds as provided in item (f) of this section.

2. (6) The powers and duties of the State Board for Community and Junior Colleges shall be:

(a) To authorize disbursements of state appropriated funds to community and junior colleges through orders in the minutes of the board.

(b) To make studies of the needs of the state as they relate to the mission of the community and junior colleges.

(c) To approve new, changes to and deletions of vocational and technical programs to the various colleges.

(d) To require community and junior colleges to supply such information as the board may request and compile, publish and make available such reports based thereon as the board may deem advisable.

(e) To approve proposed new attendance centers (campus locations) as the local boards of trustees should determine to be in the best interest of the district. Provided, however, that no new community/junior college branch campus shall be approved without an authorizing act of the Legislature.

(f) To serve as the state approving agency for federal funds for proposed contracts to borrow money for the purpose of acquiring land, erecting, repairing, etc. dormitories, dwellings or apartments for students and/or faculty, such loans to be paid from revenue produced by such facilities as requested by local boards of trustees.

(g) To approve applications from community and junior colleges for state funds for vocational-technical education facilities.

(h) To approve any university branch campus offering lower undergraduate level courses for credit.

(i) To appoint members to the Post-Secondary Educational Assistance Board.

(j) To appoint members to the Authority for Educational Television.

(k) To contract with other boards, commissions, governmental entities, foundations, corporations or individuals for programs, services, grants and awards when such are needed for the operation and development of the state public community and junior college system.

(l) To fix standards for community and junior colleges to qualify for appropriations, and qualifications for community and junior college teachers.

(m) To have sign-off approval on the State Plan for Vocational Education which is developed in cooperation with appropriate units of the State Department of Education.

(n) To approve or disapprove of any proposed inclusion within municipal corporate limits of state-owned buildings and grounds of any community college or junior college and to approve or disapprove of land use development, zoning requirements, building codes and delivery of governmental services applicable to state-owned buildings and grounds of any community college or junior college. Any agreement by a local board of trustees of a community college or junior college to annexation of state-owned property or other conditions described in this paragraph shall be void unless approved by the board and by the board of supervisors of the county in which the state-owned property is located.

3. "The state institutions of higher learning now existing in Mississippi..., and any others of like kind which may be hereafter organized or established by the State of Mississippi, shall be under the management and control of a board of trustees to be known as the Board of Trustees of State Institutions of Higher Learning, the members thereof to be appointed by the Governor of the state with the advice and consent of the Senate. . . ." Miss. Const. art. 8, § 213-A.